**[This opinion has been published in *Ohio Official Reports* at 69 Ohio St.3d 26.]**

NORANDEX, INC., APPELLEE AND CROSS-APPELLANT, *v*. LIMBACH, TAX
COMMR., APPELLANT AND CROSS-APPELLEE.

[Cite as *Norandex, Inc. v. Limbach*, 1994-Ohio-536.]

*Taxation—Use tax on aluminum siding sample cases—Retail-sales exception—*
*R.C. 5739.01(E)(2) and 5741.02(C)(2), applied—Taxable "use," when.*

(No. 92-2456—Submitted December 15, 1993—Decided April 20, 1994.)

APPEAL and CROSS-APPEAL from the Board of Tax Appeals, No. 89-D-934.

———————————

{¶ 1} The Tax Commissioner, appellant and cross-appellee, contests the Board of Tax Appeals' ("BTA's") order that no taxable event occurred in Ohio and no substantial nexus existed between Ohio and the uses to be taxed for Ohio to assess a use tax on Norandex, Inc.'s, appellee and cross-appellant's, use of sample cases or kits. Norandex cross-appeals the BTA's finding that Norandex did not use the sample cases directly in making retail sales and, thus, that the cases were not exempt from the use tax.

{¶ 2} During the audit period, July 1985 through June 1988, Norandex sold aluminum siding through its sixty branch offices, nine of which were in Ohio and the rest outside Ohio. Norandex's salesmen sold seventy percent of the siding to home remodelers and new home builders and thirty percent to lumberyards.

{¶ 3} Branch salesmen distributed sample cases to the contractors and lumberyards to display the product line available to the homeowner. A case contained samples of siding, a color chart, and a vinyl pocket in which a Norandex salesman inserted a price list.

{¶ 4} Norandex ordered the cases from Sample Kit Indiana, Inc., in Mishawaka, Indiana, through Norandex's Cleveland office after the branches had submitted orders to the Cleveland office. After manufacture, NTL, a wholly owned

contract carrier subsidiary of Norandex, transported the cases from Sample Kit to Norandex's Cleveland office.

**{¶ 5}** Norandex held the cases in its Cleveland facility until it pulled a branch's order and loaded the order on a truck bound for the branch office, along with other merchandise to be delivered to the branch. Norandex attempted to ship the cases out within ten days of receipt from Sample Kit.

**{¶ 6}** Contractors and lumberyards that received the cases showed them to homeowners to promote sales of the siding. Norandex's salesmen inserted the price lists, which set forth the book price for each item, into the vinyl pocket of the cases. The branch salesman could discount the price to its purchasers, contractors and lumberyards, if necessary to sell siding. The book price was sometimes fifty percent higher than the selling price.

**{¶ 7}** The commissioner assessed use tax against the use of all sample cases. However, on appeal, the BTA found, for cases sent out of Ohio, that no taxable event occurred in Ohio for Ohio to collect the use tax. Furthermore, the BTA found that no substantial nexus existed between Ohio and the uses to be taxed. The BTA found that the use tax here met the other three prongs of the interstate commerce test set forth in *Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 97 S. Ct. 1076, 51 L. Ed.2d 326.

**{¶ 8}** The BTA, as to the cases sent to the Ohio branches, found that the cases were not used directly in making retail sales because Norandex had failed to establish that the cases contained pricing information. Norandex's controller testified that employees at branches inserted price lists into the cases and could personally confirm that one branch actually inserted the price list into the case.

**{¶ 9}** The cause is now before this court upon an appeal and cross-appeal as of right.

—————————————

2

*Thompson, Hine & Flory*, *William R. Stewart* and *Mark A. Gamin*, for appellee and cross-appellant.

*Lee Fisher*, Attorney General, and *Lawrence D. Pratt*, Assistant Attorney General, for appellant and cross-appellee.

_____

**Per Curiam.**

{¶ 10} Since the court decides constitutional questions only when absolutely necessary, *State ex rel. Hofstetter v. Kronk* (1969), 20 Ohio St. 2d 117, 119, 49 O.O. 2d 440, 441, 254 N.E. 2d 15, 17, we will first decide whether these purchases qualify for the retail-sales exception. We will address the interstate commerce clause question for any purchases not qualifying for the retail-sales exception.

{¶ 11} R.C. 5739.01(E)(2) and 5741.02(C)(2) except purchases which will be used "directly in making retail sales" from the use tax. R.C. 5739.01(O) defines "making retail sales" as:

"[T]he effecting of transactions wherein one party is obligated to pay the price and the other party is obligated to provide a service or to transfer title to or possession of the item sold, but *it does not include* the delivery of items thereafter nor *the preliminary acts of promoting or soliciting retail sales, other than the distribution of printed matter which displays or describes and prices the items offered for sale*." (Emphasis added.)

{¶ 12} We hold that the BTA's decision that Norandex had not established that it inserted the price lists in the cases was unreasonable and reverse it.

{¶ 13} In *SFZ Transp., Inc. v. Limbach* (1993), 66 Ohio St. 3d 602, 604-606, 613 N.E. 2d 1037, 1039-1040, we reversed a BTA finding on an ultimate fact because we ruled that the given basic facts did not support the finding of this ultimate fact. We refused to defer to the BTA's finding and, instead, declared the

reasonableness of such finding appropriate for judicial determination. We declared the BTA's finding unreasonable.

{¶ 14} In this case, Norandex's controller testified that Norandex's branch salesmen inserted price lists in the sample cases and distributed the cases to the remodelers and builders. He testified that one branch actually inserted the list. No evidence refuted this testimony, simply the commissioner's suggestion that the controller did not know that the salesmen inserted the lists in every instance. From this, the BTA drew the inference that the salesmen did not insert the price lists in the cases.

{¶ 15} We conclude that the reasonable inference is that the salesmen did insert the lists as instructed by Norandex. Norandex distributed the lists with the cases with the instruction to insert the lists into the cases. Thus, the cases contained the price lists and, together, they were "printed matter which displays or describes and prices the items offered for sale." Therefore, their purchase was exempt.

{¶ 16} Further, the commissioner argues that cases distributed to remodelers, builders and lumberyards were used directly in making retail sales not by Norandex but by the remodelers, builders and lumberyards. The commissioner reasons that Norandex cannot claim the exception if another party actually used these cases in making retail sales. *H.J. Heinz Co. v. Bowers* (1960), 170 Ohio St. 423, 11 O.O. 2d 167, 165 N.E. 2d 792.

{¶ 17} However, this argument calls into question the identity of the consumer and the vendor. Transactions in which siding becomes a part of a building are construction contracts. Under R.C. 5739.01(B)(5), if tangible personal property is to be incorporated into a structure or improvement to real property, the purchase of the property by the building owner is not a sale of tangible personal property. The construction contractor, according to the statute, is the consumer of the tangible personal property. Thus, the builders and remodelers to whom Norandex distributed the cases are the consumers purchasing the items at retail.

R.C. 5739.01(E)(2). Accordingly, the exemption is available for the cases Norandex distributed to the builders and remodelers, but not for the remaining cases distributed to the lumberyards, which did not purchase the siding as consumers.

{¶ 18} Next, we address the interstate commerce claim as to the cases distributed to lumberyards. In essence, the commissioner argues that a taxable event occurred in Ohio and that substantial nexus existed for Ohio to assess the tax. Norandex responds that it did not exercise any right or power incidental to ownership and that the activity being taxed did not have substantial nexus with Ohio.

{¶ 19} The BTA held that no taxable event occurred. It further held that no substantial nexus existed to allow Ohio to collect a tax. Since *Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 97 S.Ct. 1076, 51 L. Ed.2d 326, was decided, we have not needed to consider whether the property "came to rest" in Ohio; instead, we must find a taxable event, in this case a use of the property, and apply the *Complete Auto Transit* test. *D.H. Holmes Co., Ltd. v. McNamara* (1988), 486 U.S. 24, 31, 108 S.Ct. 1619, 1623, 100 L.Ed.2d 21, 27.

{¶ 20} R.C. 5741.02(A) levies "an excise tax * * * on the storage, use, or other consumption in this state of tangible personal property or the benefit realized in this state of any service provided." R.C. 5741.01(C) defines "use" as "the exercise of any right or power incidental to the ownership of the thing used."

{¶ 21} In *Woman's Internatl. Bowling Congress v. Porterfield* (1971), 25 Ohio St.2d 271, 54 O.O. 2d 383, 267 N.E. 2d 781, paragraph three of the syllabus, we stated:

"Where a nonprofit corporation, in administering an emblems and awards program for its members, determines who is to receive such awards, opens original bulk packages of award items, selects and commingles the items into kits for shipment to the members, and removes certain awards from their individual wrappings for special engraving work or for proper sizing, a taxable *use* of such

tangible personal property has been made within the meaning of paragraph (C) of R.C. 5741.01 and 5741.02." (Emphasis *sic.*)

{¶ 22} In that case, we rejected the taxpayer's assertion that use in Ohio means the intended or ultimate use of the property, namely the enjoyment of the awards by the members who eventually received them. Instead, we explained that the exercise of any right or power incidental to the ownership of the thing used is a use for which the tax is imposed. According to the facts in that case, the taxpayer (1) purchased the items in its corporate capacity, (2) decided how many items to purchase, (3) directed its employees to open the original bulk packages, (4) selected and commingled different items into kits and placed the items in the mail to ship to recipients, and (5) in some cases, removed certain awards from individual wrappings for special engraving work or for proper sizing before mailing to the recipient. Under those circumstances, a taxable use occurred.

{¶ 23} In this case, many similar activities occurred. Norandex's branch employees informed Norandex how many items to purchase. Norandex purchased the items centrally through its Cleveland office. Norandex's subsidiary carrier obtained the cases from the Indiana firm and transported them to Norandex's Cleveland facility. Norandex held the sample cases, decided the sequence in which the branches would receive the cases, removed the cases from the pallets to place on trucks, and directed the carrier to deliver the cases to the branch offices. In these activities Norandex exercised rights or powers incidental to ownership of the cases, and, thus, use of the cases, a taxable event, occurred in Ohio.

{¶ 24} *R&M Enterprises, Inc. v. Dir. of Revenue* (Mo. 1988), 748 S.W.2d 171, supports this conclusion. In *R&M Enterprises*, the taxpayer, a Missouri wholesaler of yard goods, sent specimens of patterns and inventory to fabricators in other states, which cut them into small samples and bound the samples into books. The fabricators sent the completed books to the taxpayer in Missouri via contract carrier. The taxpayer then addressed the individual books and transmitted

them by mail, common carrier, or hand delivery to retail outlets in Missouri and elsewhere. The court, *id.* at 172, held:

"The books, nevertheless, are delivered directly to the appellant at its principal office in Missouri, and, until it ships them to the retailers, it has complete dominion and control over them. * * * It has the privilege of 'using,' in the sense of the statute. It makes no difference that it may assert this privilege only a very brief time. The privilege of using is the occasion for taxation."

{¶ 25} The court noted that if it disallowed the use tax, it would encourage the selection of out-of-state binders rather than local binders. The court, *id.* at 172, concluded that "[t]he use tax places local and out-of-state providers on an equal footing."

{¶ 26} Next, the parties disagree over whether this activity has a substantial nexus with Ohio. In *Complete Auto Transit Co. v. Brady*, *supra*, the Supreme Court overruled cases that treated taxes on interstate commerce as *per se* unconstitutional and, instead, applied a four-prong test. According to the decision, a tax does not violate the Commerce Clause when applied to interstate activity if the taxed activity has a substantial nexus with the taxing state, and if the tax is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the state. In the instant case, only the substantial nexus question is at issue.[1]

{¶ 27} Again, *R&M Enterprises, Inc. v. Dir. of Revenue*, *supra*, is instructive. The court held that the use in Missouri, even though brief, was a taxable incident providing substantial nexus with Missouri. The court concluded, *id.* at 173, that "[t]he property is completely under the appellant's control in Missouri for so long as it chooses, and the appellant enjoys the benefit and protection of our

---

1. Although Norandex also asserts that the BTA incorrectly determined that the fourth prong was met, Norandex failed to raise this in its notice of appeal. Thus, we do not have jurisdiction to consider the argument. *Christian Church of Ohio v. Limbach* (1990), 53 Ohio St. 3d 270, 560 N.E. 2d 199, fn. 1.

public services." The court decided that, under those facts, the state could constitutionally tax the use.

{¶ 28} Here, Norandex set up the ordering system and controlled the branch employees who ordered and ultimately obtained the cases. It centrally ordered the cases, received them, and controlled their disposition. These exercises of ownership and control over these cases, the taxed activities, happened in Ohio and satisfied the substantial nexus prong.

{¶ 29} Moreover, Norandex's reliance on *Am. Steamship Co. v. Limbach* (1991), 61 Ohio St. 3d 22, 572 N.E. 2d 629, is misplaced. In *Am. Steamship Co.*, we excepted the sale of a vessel used in interstate or foreign commerce from the sales tax under a statute specifically providing for such exemption. Thus, we interpreted a sales tax exception that required us to decide whether the instrument of commerce was used in interstate commerce, not whether the tax violated the interstate commerce clause. According to *D.H. Holmes Co., Ltd. V. McNamara*, *supra*, 486 U.S. at 31, 108 S.Ct. at 1623, 100 L.Ed. 2d at 27, this would be among the few times a stream-of-interstate-commerce analysis might arise. Furthermore, the *D.H. Holmes* court stated that current constitutional law allows a state to tax interstate commerce so that interstate commerce pays its fair share of state taxes. *Id.* at 30-31, 108 S.Ct. at 1623, 100 L.Ed 2d at 27.

{¶ 30} Consequently, we modify the decision of the BTA. We exempt those contested purchases that were used in making retail sales and, furthermore, conclude that the remaining cases are not exempted from Ohio taxation by being within interstate commerce. We remand this matter to the BTA to determine which cases were used directly in making retail sales, consistent with this opinion.

*Decision reversed*
*and cause remanded.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

January Term, 1994

---