[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 296.]

CENTRAL TRANSPORT, INC. ET AL., APPELLANTS, *v.* TRACY, TAX COMMR., APPELLEE.

**[Cite as *Cent. Transport, Inc. v. Tracy*, 1995-Ohio-220.]**

*Taxation—Sales and use taxes—Purchases of batteries, facsimile machines, printers and forklifts for own use at locations outside Ohio by common carrier authorized to transport commodities throughout the United States— Items are not stored or opened in Ohio but placed almost immediately on outgoing trucks headed out of state—Taxable event occurs, when.*

(No. 94-1449—Submitted February 16, 1995—Decided June 14, 1995.)

APPEAL from the Board of Tax Appeals, Nos. 91-D-1553 and 91-D-1554.

———————————

{¶ 1} Appellant, Central Transport, Inc., is a common carrier authorized to transport commodities throughout the United States. Appellant, Central Cartage Company, is an affiliate of Central Transport and makes local pick-ups and deliveries in various cities.

{¶ 2} Both appellants, Central Transport and Central Cartage (collectively, "Central") appealed to the Board of Tax Appeals ("BTA") from the Tax Commissioner's sales and use tax assessments. They argued that the assessments on certain purchases were improper because the items were so integrated into the flow of interstate commerce that Ohio never had the power to tax them. The cases were consolidated by the BTA and, after an evidentiary hearing, the commissioner's assessments were affirmed. Central has appealed to this court.

{¶ 3} Central operates a "cross-dock" terminal in Toledo. The thirty-six-foot-wide terminal has thirty incoming doors on one side and thirty outgoing doors on the other. It has no storage capacity.

{¶ 4} During the audit period, Central purchased batteries, facsimile machines, printers, and forklifts for its own use at locations outside Ohio. These items were either picked up by Central from Ohio vendors and transported to the Toledo terminal or were shipped there by Ohio or non-Ohio vendors. These items arrived at an incoming door, were unloaded on the dock, unwrapped, if necessary, briefly inspected, and loaded by forklift onto an outgoing vehicle. Outgoing items were often loaded with other customer freight before shipment. If an item inspected at the dock is damaged, it is returned to the vendor. Undamaged items are transported from the terminal according to prior shipping instructions, unless a supervisor decides otherwise. Items are shipped promptly and usually remain at the terminal no more than three to four hours.

{¶ 5} The cause is now before this court upon an appeal as of right.

_____

*Rendigs, Fry, Kiely & Dennis, D. Michael Poast* and *B. Scott Boster*, for appellants.

*Betty D. Montgomery*, Attorney General, and *Richard C. Farrin*, Assistant Attorney General, for appellee.

_____

**Per Curiam.**

{¶ 6} Appellants contend they are not subject to sales and use tax assessments, but are entitled to exemption under the Commerce Clause of the United States Constitution, and R.C. 5739.02(B)(10) and 5741.02(C)(3). Appellants claim that the activities in question have no substantial nexus with the state of Ohio, since the taxed items are not stored or even opened in Ohio, but are placed almost immediately on an outgoing truck headed out of state. Thus, appellants claim, the assessments are not within Ohio's taxing power under the federal Commerce Clause.

{¶ 7} The BTA, citing *Norandex, Inc. v. Limbach* (1994), 69 Ohio St.3d 26, 630 N.E.2d 329, found that the vendors of the items in question "transferred title, or possession, or both, of the purchased items to Central * * *  at the Toledo terminal" and Central "proceeded to exercise [its] rights of ownership and possession relative to storage, [or] use, * * * while under the various governmental protections of the State of Ohio, upon taking such title or possession, or both, at the Toledo terminal [which] constitute[d] a legal basis for the tax assessments." Accordingly, the BTA affirmed the sales and use tax assessments.

{¶ 8} Our review leads us to consider the four-part test set forth in *Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 91. According to *Complete Auto Transit*, a tax does not violate the Commerce Clause if (1) the taxed activity has a substantial nexus with the taxing state, (2) the tax is fairly apportioned, (3) the tax does not discriminate against interstate commerce, and (4) the tax is fairly related to benefits provided by the state.  Appellants argue that the required "substantial nexus" is absent in this case.  We disagree.

{¶ 9} In *Norandex*, *supra*, 69 Ohio St.3d at 29, 630 N.E.2d at 332, we examined the taxpayer's claim that it did not exercise any right or power incidental to ownership while the goods in question were in Ohio, and that the activity being taxed did not have a substantial nexus with Ohio.  We concluded that since *Complete Auto Transit* was decided, "we have not needed to consider whether the property 'came to rest' in Ohio; instead, we must find a taxable event, in this case a use of the property, and apply the *Complete Auto Transit* test."

{¶ 10} In analyzing the instant claim, we must determine whether the taxpayers exercised rights of ownership and control over the property, and whether this exercise occurred in Ohio.  In this case, the evidence establishes that Central did exercise rights of ownership in Ohio.  Central took title to and possession of the property at the dock facility in Toledo.  In dealing with the disputed property, Central's employees moved the items from shipping pallets, removed coverings as

necessary, inspected the items, and moved them to appropriate outgoing vehicles in accordance with prior instructions, or by instructions given by the dock supervisors. That all of this activity may have consumed only a few minutes, and in all cases less than a few hours, is of no significance. This exercise of rights over the property is the taxable event, and this exercise occurred in Ohio, providing a substantial nexus with Ohio.

{¶ 11} The decision of the BTA is not unreasonable or unlawful, and it is affirmed.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

WRIGHT, PFEIFER AND COOK, JJ., dissent.

_____

**COOK, J., dissenting.**

{¶ 12} I respectfully dissent. The decision of the BTA should be reversed and Central Transport found not liable for these assessments because the required "substantial nexus" with Ohio is absent.

{¶ 13} As this court stated in *Norandex, Inc. v. Limbach* (1994), 69 Ohio St.3d 26, 29, 630 N.E.2d 329, 332, in order for Ohio to impose a tax, a taxable event must occur and the four-prong test of *Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 91, must be satisfied.

{¶ 14} Although it can be argued that a taxable event as to the disputed property occurred in Ohio when Central took title to and possession of the property at the Toledo facility, such a finding is not enough to allow Ohio to collect a tax. The court must further find, under the first prong of the *Complete Auto Transit* test, that the taxed activity has a substantial nexus with the taxing state. In *Norandex*, the company's Cleveland office placed the order for the disputed property. In support of its finding of the substantial nexus, the *Norandex* court cited the following facts: The Cleveland office of "Norandex set up the ordering system and

controlled the branch employees who ordered and ultimately obtained the cases. It centrally ordered the cases, received them, and controlled their disposition. These exercises of ownership and control over these cases, the taxed activities, happened in Ohio and satisfied the substantial nexus prong." *Norandex*, 69 Ohio St.3d at 31, 630 N.E.2d at 333.

{¶ 15} Unlike the property in *Norandex*, the Central Transport property merely passed through the Toledo terminal during, and as part of, an interstate commerce transportation process. Central made the purchases from its principal place of business in Michigan. The property, when it arrived at the cross-dock in Toledo, was not opened or stored because Central's Toledo terminal was a truck-to-truck operation. The property in its original packaging was immediately placed on an outgoing truck headed for the out-of-state destination as previously directed by the principal office in Michigan. Moreover, because Central made its determination as to where items would be delivered in Michigan at the time of the purchase, the workers at the cross-dock did not decide where to ship the property.

{¶ 16} Accordingly, I would hold that the decision of the BTA is unreasonable and would reverse that decision.

WRIGHT and PFEIFER, JJ., concur in the foregoing dissenting opinion.

————————————