[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 338.]

[THE STATE EX REL.] BSW DEVELOPMENT GROUP, APPELLANT, *v.* CITY OF
DAYTON ET AL., APPELLEES.

[Cite as *State ex rel. BSW Dev. Group v. Dayton*, 1998-Ohio-287.]

*Mandamus to compel respondents to commence appropriation proceedings on
relator's building after respondents denied a demolition permit for a
building listed on the National Register of Historic Places—Writ denied,
when.*

(No. 98-473—Submitted August 19, 1998—Decided October 14, 1998.)

APPEAL from the Court of Appeals for Montgomery County, No. 15186.

————————————

{¶ 1} In the late nineteenth century, a building now known as the Wilcon
Building was constructed along the Miami-Erie Canal in Dayton. The building was
originally used for various enterprises, including linseed oil manufacturing, flour
milling, and wheat and tobacco storage. By the 1980s, Wilcon Corporation
("Wilcon"), Dayton Tire Sales, and Wat-kem Mechanical, Inc. ("Wat-kem") each
occupied one-third of the building. Wilcon Corporation, a construction company
owned and operated by Dennis Williams, had its office as well as a millwork shop
and storage area in the building. Dayton Tire used its portion of the building for
tire sales and installation in addition to other automotive services. Wat-kem, a
mechanical contracting company, had an office and storage space in the building.

{¶ 2} In 1984, BSW Development Group ("BSW"), a partnership
composed of attorney Dwight D. Brannon, accountant William I. Schoenfeld, and
Williams, purchased the Wilcon Building and adjoining property for $315,000.
BSW subsequently sold a portion of the property that did not include the Wilcon
Building for $250,000. BSW decided to develop an office park consisting of two
new buildings on the remaining land. Pursuant to its development plan, BSW

demolished the existing building on the property adjacent to the Wilcon Building and constructed a new building called Canal North, which BSW made available for lease. BSW planned then to tear down the Wilcon Building and construct a new building to be known as Canal South on the property.

{¶ 3} In anticipation of the demolition of the Wilcon Building, Wilcon moved to the Canal North building in January 1989, and Dayton Tire vacated the Wilcon Building after BSW brought an eviction action. Wat-kem had previously vacated the Wilcon Building. At the time that Wilcon and Dayton Tire vacated the Wilcon Building, Wilcon and Dayton Tire were paying approximately $18,000 and $23,000 in annual rent, respectively. Before moving out of the building, Wilcon renovated its space by constructing new offices, including a computer room and a kitchenette, leveling and carpeting the floors, and reworking the electrical and sanitary systems to bring that portion of the building into compliance with the Dayton Building Code.

{¶ 4} In March 1989, BSW applied to appellee city of Dayton for a permit to demolish the Wilcon Building. Dayton refused BSW's application because BSW had not complied with Section 150.45 of the Dayton Revised Code of General Ordinances, which provides that "[w]henever an application is made for a demolition permit for any structure or site listed on or eligible for the National Register of Historic Places, no demolition permit shall be issued until the applicant has complied with the provisions of Section 150.246 of the R.C.G.O. irrespective of any other provisions of this subchapter." BSW then applied under Section 150.246 of the city code for a certificate of appropriateness from appellee Dayton Landmark Commission. In July 1989, the commission denied BSW's application because BSW failed to introduce clear evidence that the square foot cost of meeting the minimum building code would exceed the square foot market value of similarly

used and improved structures in the planning district.[1] In October 1989, appellee Dayton Board of Zoning Appeals affirmed the decision of the Landmark Commission. The "as is" value of the Wilcon Building and property at that time was $220,000.

{¶ 5} BSW appealed the board's decision to the Montgomery County Court of Common Pleas. In 1991, the common pleas court reversed the board's decision. The common pleas court concluded that the Landmark Commission and the board of zoning appeals had denied BSW due process and equal protection and that Dayton's historic preservation ordinances were unconstitutional as applied to BSW's property. Upon further appeal by the board in May 1993, the Court of Appeals for Montgomery County affirmed the common pleas court's decision. In so holding, however, the court of appeals determined that it was unnecessary to pass upon the constitutionality of the ordinances because "BSW fulfilled the stringent requirements of R.C.G.O. 150.246(A)(4) for obtaining the certificate of appropriateness and therefore should have been granted the demolition permit."

{¶ 6} Following the court of appeals' May 1993 judgment, the Dayton Historic Preservation Officer notified BSW that the Landmark Commission would issue a certificate of appropriateness for the requested demolition permit when BSW complied with the remaining requirements of Section 150.246 by submitting a reuse plan and requesting a waiver of the fee and bond requirements. The reuse plan requirement is not burdensome, and Dayton was willing to waive the fee and bond requirements.

---

1. Section 150.246 of the Revised Code of General Ordinances of Dayton provides:
   "A demolition permit shall not be issued unless accompanied by an approved Certificate of Appropriateness. The Landmark Commission may only approve a Certificate of Appropriateness if:
   "(A) The applicant has given clear evidence that one of the following conditions exist[s]:
   " * * *
   "(4) The square foot cost of meeting the minimum building code would exceed the square foot market value of similarly used and improved structures in the planning district."

{¶ 7} Instead of submitting a reuse plan and requesting a waiver of the fee and bond requirements, BSW filed an action in the common pleas court alleging, among other things, that appellees, Dayton, the Landmark Commission, and the board of zoning appeals, had taken BSW's Wilcon Building property, thereby entitling BSW to compensation for the taking. In 1995, following removal of the action to a federal district court, the district court granted summary judgment against BSW on its Fifth Amendment takings claim because BSW had not exhausted its state remedies by seeking a writ of mandamus to compel Dayton to commence appropriation proceedings.

{¶ 8} BSW then filed a complaint in the Court of Appeals for Montgomery County for a writ of mandamus to compel appellees to commence appropriation proceedings on the Wilcon Building property. BSW claimed that it was entitled to be compensated for the city's unconstitutional taking of its property, which resulted from appellees' denial of BSW's demolition permit. BSW did not assert any claim that it was entitled to extraordinary relief because the Dayton ordinances relied upon by the Landmark Commission and the board of zoning appeals were unconstitutional or that the city officials fraudulently and intentionally misrepresented the landmark status of the Wilcon Building.

{¶ 9} The parties submitted evidence and BSW filed a motion for summary judgment. In its summary judgment motion, BSW raised the claim that the Dayton historic preservation ordinances were unconstitutional. The evidence established that after the city's 1989 denial of the demolition permit, BSW abandoned the Wilcon Building property, resulting in hazards to the public, including to homeless persons trespassing on the property. BSW had the heat and electricity to the building disconnected. Despite several requests by city officials for BSW to secure the property for the safety of the public, BSW failed to act. Dayton then secured the entrance to the Wilcon Building to prevent the general public from accessing the property in order to keep the premises safe. BSW, however, was provided keys

to all of the padlocks and was never prevented from accessing the property after the demolition permit was denied. Following the court of appeals' 1993 judgment, Dayton did not restrict BSW's right and ability to use the property or to demolish the Wilcon Building.

{¶ 10} In March 1996, the court of appeals issued a decision denying BSW's motion for summary judgment because BSW had not established a permanent, temporary, or physical taking of its property. The court of appeals declined to address BSW's contention that the Dayton historical preservation ordinances were unconstitutional. The court of appeals referred the case to a special master in order to determine the sole issue of whether the city's 1989 denial of the demolition permit deprived BSW of all economically viable use of its Wilcon Building property.

{¶ 11} The special master then conducted hearings on the foregoing issue. At the hearings, the evidence established that following the 1989 denial of the demolition permit, BSW used the property surrounding the Wilcon Building for parking, including spaces for one of its Canal North tenants and monthly rental spaces for the general public. BSW also stored a boat and two wrecked cars in the building.

{¶ 12} In addition, Michael Cromartie, the city's chief building official, testified that the building was structurally sound and that the city did not require a prospective building tenant to obtain a new certificate of occupancy before leasing the property even if code violations existed in other parts of the building, as long as the use of that portion of the building remained the same as it had been for the previous tenant. Cromartie admitted, however, that BSW had to remedy a few serious hazards, *i.e.*, lack of fire-wall enclosures for the elevator and parts of stairways, and repair of the building's electrical system, before any tenant could move back into the building. These hazards existed at the time that appellees denied BSW's demolition permit.

**{¶ 13}** In 1997, the special master issued a report recommending that the court of appeals deny the writ of mandamus because appellees' denial of a demolition permit did not deprive BSW of all economically viable use of its property. In 1998, the court of appeals overruled BSW's objections to the special master's report, adopted the special master's findings of fact and conclusions of law, and denied the writ.

**{¶ 14}** This cause is now before the court upon an appeal as of right.

_____

*Dwight D. Brannon & Associates, Dwight D. Brannon* and *Walter J. Krygowski*, for appellant.

*Freund, Freeze & Arnold*, *Neil F. Freund* and *Shawn M. Blatt*, for appellees.

_____

*Per Curiam.*

**{¶ 15}** BSW asserts that the court of appeals erred by denying a writ of mandamus to compel appellees to commence appropriation proceedings. Mandamus is the appropriate vehicle for compelling appropriation proceedings by public authorities where an involuntary taking of private property is alleged. *State ex rel. Levin v. Sheffield Lake* (1994), 70 Ohio St.3d 104, 108, 637 N.E.2d 319, 323, citing *State ex rel. McKay v. Kauer* (1951), 156 Ohio St. 347, 46 O.O. 204, 102 N.E.2d 703, paragraph three of the syllabus. In these actions, the court, as the trier of fact and law, must determine whether the private property had been taken by the public authority. *Levin*, 70 Ohio St.3d at 108, 637 N.E.2d at 323. The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation. Fifth and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution; see, also, R.C. Chapter 163.

**{¶ 16}** In its various propositions of law, BSW contends that the court of appeals erred by (1) limiting the special master's evidentiary hearings to a single

issue, (2) placing the burden of proof on BSW, (3) concluding that the evidence did not establish a compensable taking, (4) refusing to grant BSW's request for a declaratory judgment on the constitutionality of Dayton's historic preservation ordinances, and (5) declining to grant the writ based on Dayton officials' fraudulent and intentional misrepresentation regarding eligibility of the Wilcon Building for landmark status.

{¶ 17} For the following reasons, however, BSW's contentions are meritless, and we affirm the judgment of the court of appeals.

{¶ 18} First, the court of appeals properly limited its special master's evidentiary hearings to the single issue of whether BSW had been denied all economically viable use of its property during the period that the city improperly denied the demolition permit. BSW argues that it established a permanent taking of its Wilcon Building property in which the city physically invaded the property. In cases of either physical invasion of the land or the destruction of a fundamental attribute of ownership like the right of access, the landowner need not establish the deprivation of *all* economically viable uses of the land. See, *e.g., Lucas v. South Carolina Coastal Council* (1992), 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798, 812-813; *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 667 N.E.2d 8, syllabus.

{¶ 19} Notwithstanding BSW's assertions, appellees established that any alleged taking was not permanent. After the court of appeals' May 1993 judgment holding that BSW should have been granted the certificate of appropriateness for the demolition permit, the city advised BSW that the Landmark Commission would issue a certificate of appropriateness for the requested demolition upon satisfaction of certain ministerial requirements. But BSW refused to seek the demolition permit at that time, although appellees would not have opposed its issuance.

{¶ 20} The evidence also established that any alleged taking resulted from neither physical invasion of BSW's land nor destruction of a fundamental attribute

of BSW's ownership, such as the right to access public streets or highways on which the land abuts. See, *e.g., Lucas*, 505 U.S. at 1015, 112 S.Ct. at 2893, 120 L.Ed.2d at 812-813; *OTR*, 76 Ohio St.3d 203, 667 N.E.2d 8, syllabus. Dayton's attempts to safeguard the public after BSW essentially abandoned the Wilcon Building did not restrict BSW's ability to access and use the property. And BSW cites no persuasive authority that mandates a holding that the right to demolish a building and construct a new building is " 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.' " *Dolan v. Tigard* (1994), 512 U.S. 374, 384, 114 S.Ct. 2309, 2316, 129 L.Ed.2d 304, 316, quoting *Kaiser Aetna v. United States* (1979), 444 U.S. 164, 176, 100 S.Ct. 383, 391, 62 L.Ed.2d 332, 344 (involving issues of access, *i.e.*, the right to exclude others); *OTR* (right of access); see, also, *Corn v. Lauderdale Lakes* (C.A.11, 1996), 95 F.3d 1066, 1074-1075, where the court held that the developer had to prove that the alleged taking deprived him of all economically viable uses of land because his land had not been physically invaded and he did not "contend that the right to build a mini-warehouse is a fundamental attribute of ownership."

{¶ 21} Therefore, given BSW's failure to properly raise any constitutional issue of whether the Dayton historic preservation ordinances substantially advance legitimate state interests, as discussed *infra*, BSW could only establish entitlement to appropriation proceedings if it established that appellees' denial of the demolition permit denied BSW all economically viable use of the Wilcon Building property. In other words, "in order for the landowner to prove a [regulatory] taking, he or she must prove that the application of the ordinance has infringed upon the landowner's rights to the point that there is no economically viable use of the land and, consequently, a taking has occurred for which he or she is entitled to compensation." *Goldberg Cos., Inc. v. Richmond Hts. City Council* (1998), 81 Ohio St.3d 207, 210, 690 N.E.2d 510, 512.

**{¶ 22}** More specifically, the United States Supreme Court held as follows regarding when the denial of a property-use permit constitutes a regulatory taking:

"A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself 'take' the property in any sense: after all, the very existence of a permit system implies that permission may be granted, leaving the landowner free to use the property as desired. Moreover, *even if the permit is denied, there may be other viable uses available to the owner. Only when a permit is denied and the effect of the denial is to prevent 'economically viable' use of the land in question can it be said that a taking has occurred*." (Emphasis added.) *United States v. Riverside Bayview Homes, Inc.* (1985), 474 U.S. 121, 127, 106 S.Ct. 455, 459, 88 L.Ed.2d 419, 426.

**{¶ 23}** Based on the foregoing, the court of appeals appropriately restricted the scope of its special master's task to resolving the sole issue of whether the denial of the demolition permit deprived BSW of all economically viable use of its property.

**{¶ 24}** Second, the court of appeals did not err by placing the burden of proof on BSW. BSW had the burden of proving entitlement to extraordinary relief in mandamus, including the establishment of a clear legal right to appropriation proceedings because of the deprivation of all economically viable use of the land. See, *e.g., State ex rel. Serv. Emp. Internatl. Union, Dist. 925 v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 173, 176-177, 689 N.E.2d 962, 965; *Goldberg Cos.*, 81 Ohio St.3d at 210, 690 N.E.2d at 512; *Ketchel v. Bainbridge Twp.* (1992), 79 Ohio App.3d 174, 179, 607 N.E.2d 22, 25.

**{¶ 25}** Third, the court of appeals correctly concluded that BSW did not establish a compensable taking. The court of appeals held that the denial of BSW's demolition permit did not deprive it of all economically viable use of the Wilcon Building property. Reviewing courts defer to a lower court's factual determination

if it is supported by competent, credible evidence. *State ex rel. Fleming v. Rocky River Bd. of Edn.* (1997), 79 Ohio St.3d 200, 205, 680 N.E.2d 981, 984-985.

{¶ 26} Here, competent, credible evidence supports the court of appeals' holding. The city's chief building official testified that the Wilcon Building is structurally sound and that building tenants would not require new certificates of occupancy if they continued previous tenants' uses. In addition, at least two-thirds of the building had been used by at least two different businesses for several years just before the denial of the demolition permit, and that portion of the building could have continued to have been used by those businesses if they had not vacated the building. See *The Shopco Group v. Springdale* (1990), 66 Ohio App.3d 702, 708, 586 N.E.2d 145, 150, holding that a "deprivation of * * * economic or development rights does not amount to a denial of all use of one's property, including the rights of possession and use of the property." The property continued to be used for parking and storage after the denial of the permit. Further, any serious hazards that required repair prior to leasing the building existed before the permit denial. Finally, "something more than loss of market value or loss of the comfortable enjoyment of the property is needed to constitute a taking." *State ex rel. Pitz v. Columbus* (1988), 56 Ohio App.3d 37, 41, 564 N.E.2d 1081, 1086; see, also, *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cty.* (1987), 482 U.S. 304, 320, 107 S.Ct. 2378, 2388, 96 L.Ed.2d 250, 267.

{¶ 27} Fourth, the court of appeals did not err by refusing to consider BSW's request for a declaratory judgment on the constitutionality of Dayton's historic preservation ordinances. BSW did not request this relief in its complaint and did not amend its complaint to include this claim. When BSW raised this constitutional issue in its initial merit brief and motion for summary judgment in the court of appeals, appellees did not expressly or impliedly consent to litigation of the claim. Therefore, the court of appeals did not need to consider this constitutional claim. *State ex rel. Massie v. Gahanna-Jefferson Pub. Schools Bd.*

10

*of Edn.* (1996), 76 Ohio St.3d 584, 589, 669 N.E.2d 839, 843. BSW does not assert that it properly pled this claim in the court of appeals.

**{¶ 28}** In addition, while the constitutionality of a statute or ordinance may in certain limited circumstances be challenged by mandamus, see *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 341, 673 N.E.2d 1351, 1354, courts decide constitutional questions only when "absolutely necessary." *Norandex, Inc. v. Limbach* (1994), 69 Ohio St.3d 26, 28, 630 N.E.2d 329, 331. Resolution of the constitutionality of Dayton's historic preservation ordinances was not absolutely necessary here because, as the court of appeals concluded, any alleged taking resulted from the improper denial by appellees of the demolition permit under the pertinent ordinances rather than the unconstitutionality of those ordinances. Therefore, the constitutional issue was not properly before the court of appeals in that the true objective of BSW's request was a declaratory judgment, which the court of appeals lacked jurisdiction to grant. *Wright v. Ghee* (1996), 74 Ohio St.3d 465, 466, 659 N.E.2d 1261, 1262. See, *e.g.*, BSW's summary judgment motion, where it claimed entitlement to a "declaration of the constitutionality of the [historical preservation ordinances], in whole and/or in part, and in its application to the entire public and/or BSW, under the circumstances at bar or in its general application to all."

**{¶ 29}** Finally, BSW also waived its claim that it was entitled to the requested writ of mandamus because of appellees' fraudulent and intentional misrepresentation by not properly pleading or raising this claim in the court of appeals. *Massie*, 76 Ohio St.3d at 589, 669 N.E.2d at 843. Reviewing courts do not consider questions that have not been presented to the court whose judgment is sought to be reversed. *State ex rel. Quarto Mining Co. v. Foreman* (1997), 79 Ohio St.3d 78, 81, 679 N.E.2d 706, 709.

**{¶ 30}** Based on the foregoing, the court of appeals properly denied BSW's request for extraordinary relief in mandamus. Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————