OPINION
{¶ 1} The instant action in mandamus is presently before this Court for consideration of respondents' motion for summary judgment as to the entire petition of relator, Richard A. Duncan. As the primary basis for their motion, respondents, various public officials and public entities associated with the City of Mentor, Ohio, submit that they are entitled to prevail on the mandamus claim because they have not taken any specific step to limit relator's use of his real property through the enforcement of a governmental regulation. For the following reasons, this court concludes that the granting of summary judgment is warranted in this instance.
 {¶ 2} Our review of the parties' respective pleadings and evidentiary materials indicates that the underlying facts of this case are fairly straightforward. Relator is the owner of a vacant parcel of real property which is located on Savannah Drive in the City of Mentor, Ohio. This parcel is approximately one acre in size, has approximately ninety-eight feet of frontage, and is partially bisected by a large drainage ditch. The parcel is located in a region of Mentor which is zoned for, inter alia, single-family dwellings. Furthermore, the parcel in question is entirely surrounded by that type of structures.
 {¶ 3} In addition to being within the territorial jurisdiction of the City, relator's land is also a part of the Shiloh Park Subdivision. When the construction of this subdivision initially started in 1984, the original owner and developer of the entire tract, Birchfield Homes, Inc., executed a declaration of certain covenants and restrictions which were to run with all of the parcels located within the subdivision. This declaration provided that some of the parcels were to be designated as "lots" upon which residential homes could be built, while other parcels were to be designated as "common areas" which were to be owned by the Shiloh Park Homeowners Association for the benefit of all "lot" owners within the subdivision. Relator purchased his parcel at a sheriff's sale which occurred many years after the declaration had been executed and the Association had been created.
 {¶ 4} In late August 2002, relator filed with the Mentor Municipal Planning Commission an application concerning a proposed use of the disputed parcel. In this application, he requested the Commission to declare that he was entitled to build a single-family home on the parcel. In support of his request, relator stated that the proposed home would not interfere with the City's easement by the drainage ditch, and that he would not need to obtain any variances in order to satisfy any City zoning requirements as to the site of the home.
 {¶ 5} The Planning Commission first considered relator's "declaration" application at its meeting of September 19, 2002. At this proceeding, several residents of the subdivision voiced their objection to the proposed home, primarily on the basis that the area around the ditch tended to flood quite often. At least one of the residents also asserted that the owners of the adjacent homes might be willing to purchase relator's parcel back for the benefit of the entire subdivision. At the end of this meeting, the Planning Commission decided to "table" relator's application until additional information could be obtained as to the scope of the restrictive covenants in the 1984 subdivision declaration.
 {¶ 6} Over the next few months, the Planning Commission continued to "table" relator's application. In December 2002, the Planning Commission received a "staff report" in which its legal counsel stated that he had been able to review a copy of the subdivision declaration and a copy of the deed to relator's parcel. Without stating a legal opinion on the matter, the Commission's counsel noted that the deed specifically provided that any conveyance of the parcel in question would be subject to any restriction or covenant set forth in the declaration. Counsel further indicated that, like the subdivision declaration, the Articles of Incorporation and the Bylaws for the Homeowners Association contained statements as to the distinction between a "lot" and the "common area" throughout the subdivision.
 {¶ 7} In light of the foregoing report, the Planning Commission informed relator during its meeting of January 9, 2003, that he would not be able to build the proposed home until the Bylaws of the Homeowners Association had been altered. That is, relator was told that, under the current Bylaws, his parcel was considered "common area" upon which a house could not be built. Relator then requested additional time in which to review the subdivision declaration and other applicable documents.
 {¶ 8} During the meeting of January 30, 2003, relator stated to the Commission that, in his opinion, any restrictive covenant in the subdivision declaration was not applicable to his parcel because he had never been a resident of the subdivision. Relator also stated that the City of Mentor had not responded to his offer to sell the parcel for $11,000. At the close of relator's statement, the Planning Commission voted unanimously to deny relator's application to build the proposed home. In doing so, each of the Commission's seven members stated on the record that the decision to deny was based on the "fact" that relator's parcel was not recognized as a "lot" upon which a home could be built.
 {¶ 9} After receiving an official letter restating the Commission's decision to deny, relator brought the instant mandamus case against the Planning Commission, the Mentor City Council, and the respective individual members of those public bodies. For his ultimate relief under his petition, relator requested this court to render an order under which the two public bodies and their members, i.e., respondents in this case, would be required to commence an appropriation proceeding in relation to his vacant parcel in the Shiloh Park Subdivision. In support of his request, relator asserted that respondents' actions in enforcing the City's zoning laws and regulations against his parcel had not advanced a legitimate state interest and had deprived him of all economically viable uses of his land In light of this, he further asserted that the decision to deny his application had resulted in a public "taking" of his land which entitled him to compensation.
 {¶ 10} Prior to filing an answer to the mandamus petition, respondents moved this court to dismiss this action on the grounds that relator would not be able to satisfy each element of a mandamus claim. Specifically, respondents argued that relator's allegations were insufficient to establish the lack of an adequate legal remedy in this instance because those allegations indicate that he could have pursued an administrative appeal from the Planning Commission's decision. Once relator had submitted a response to the motion to dismiss, this court rendered a judgment in which we rejected respondents' argument and overruled the motion. As the basis for our judgment, we held that an administrative appeal could not be considered an adequate legal remedy under these circumstances because a common pleas court in such an appeal could not grant relator the same relief he sought in the instant case.
 {¶ 11} In now moving for summary judgment as to relator's entire petition, respondents contend that the commencement of an appropriation proceeding should not be ordered because relator cannot prove that his parcel has been the subject of a public taking by the City of Mentor. Respondents submit that the minutes of the Planning Commission's last meeting on relator's application readily indicate that the Commission's decision was not based upon relator's failure to satisfy any of the City's zoning laws, but was instead predicated on the existence of the covenants in the subdivision declaration which do not allow a home to be built on the disputed parcel. In light of this, respondents argue that, since relator's inability to construct the proposed home is not due to the enforcement of a governmental regulation, a taking of private property has not occurred.
 {¶ 12} In support of the foregoing argument, respondents have attached to their summary judgment motion copies of the minutes of every Planning Commission meeting at which relator's application was considered. They have also submitted copies of certain "staff reports" which the Commission's counsel prepared on the issue of the covenants in the subdivision declaration. In addition, they have submitted with their motion copies of the subdivision declaration and the Homeowners Association's Articles of Incorporation and its Bylaws.
 {¶ 13} In responding to the motion for summary judgment, relator has not challenged the authenticity of the documents submitted by respondents. Furthermore, he has not tried to contest respondents' factual assertion that the decision to deny his application was based on the existence of the restrictive covenants in the declaration. Instead, relator maintains that a taking did occur because: (1) the Planning Commission misinterpreted the scope of the covenants in the declaration; and (2) the Commission's reliance on the covenants still constitutes a governmental action which restricts his use of his property.
 {¶ 14} At the outset of our legal discussion, this court would first note that the evidentiary materials which respondents attached to their present motion were not accompanied by an affidavit of a qualified person who could state that the materials are proper copies of the original documents. In interpreting Civ.R. 56(C), the courts of this state have stated that if any evidentiary material does not fall within one of the categories of documents which, according to the rule, can be reviewed as part of a summary judgment exercise, that material can be considered only when it is accompanied by a proper affidavit which establishes its authenticity. See Biskupich v.Westbay Manor Nursing Home (1986), 33 Ohio App.3d 220. However, this court has further held that if the responding party in the summary judgment exercise does not object to the lack of the affidavit, the evidentiary material can still be considered if it appears to be authentic. Gill v. PMC Industries, Inc., 11th Dist. No. 95-L-143, 1996 Ohio App. LEXIS 5803.
 {¶ 15} In the instant case, relator has not raised any specific challenge to the authenticity of the various copies of documents submitted by respondents. In regard to the minutes of the Planning Commission's meetings, although relator does assert that the individual who was responsible for taking the minutes did not understand some of his statements concerning whether he had been told to submit certain information to the Commission, he has not objected to respondents' general assertion that the submitted documents are authentic copies of the official minutes of the meetings. Furthermore, he has not raised any objection to the parts of the minutes in which the members of the Commission state the basis for their decision to deny. Therefore, since the submitted materials pertaining to the existence of the covenants and the basis of the Commission's decision appear to be accurate copies of the original documents, this court will consider those materials in disposing of the present summary judgment motion.
 {¶ 16} In turn, our review of those specific materials verifies the primary factual assertion upon which respondents' motion is predicated. That is, our review of the official minutes of the Planning Commission's meetings demonstrates that, in stating on the record their respective reasons for denying relator's application to build the proposed house, each member of the Commission referred solely to the existence of the restrictive covenants in the subdivision declaration. As a result, the legal issue before this court is whether the Commission's reliance upon the provisions of the declaration is sufficient to warrant the commencement of an appropriation action regarding relator's parcel.
 {¶ 17} As a general proposition, a writ of mandamus can lie to compel public authorities to initiate an appropriation proceeding as to private property which has been the subject of an involuntary taking. State ex rel. Shemo v. Mayfield Hts.
(2002), 95 Ohio St.3d 59. In this specific type of mandamus case, the relator's entitlement to the issuance of the writ will turn primarily upon the court's resolution, as the trier of all factual and legal issues, of the question of whether the public authorities have taken any of the relator's property rights in his real estate. State ex rel. Levin v. Sheffield Lake (1994),70 Ohio St.3d 104. A determination of an involuntary taking can be predicated on either an actual physical invasion of the real estate or any regulatory decision which has the effect of sufficiently diminishing the relator's property rights. See, generally, State ex rel. BSW Dev. Group v. Dayton (1998),83 Ohio St.3d 338.
 {¶ 18} In light of the nature of the factual assertions in the instant petition, it is apparent that relator is claiming that his land has been the subject of a regulatory taking through the decision of the Planning Commission. In considering this type of involuntary taking in the context of an action for just compensation, the United States Supreme Court has essentially concluded that such a taking does not occur until the public authorities have had an full opportunity to review the matter and render a decision: "* * * a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."Williamson Cty. Regional Planning Comm. v. Hamilton Bank ofJohnson City (1985), 473 U.S. 172, 186. The underlying basis for this conclusion is that the constitutional issue of whether a taking has occurred should not be addressed until it is evident that no administrative solution to the dispute can be reached. Id., at 187, quoting Hodel v. Virginia Surface Mining Reclamation Assn., Inc. (1981), 452 U.S. 264, 297.
 {¶ 19} In Karches v. City of Cincinnati (1988),38 Ohio St.3d 12, the Supreme Court of Ohio expressly chose to follow theWilliamson Cty. holding concerning the requirement of a final regulatory decision before any action for compensation can be brought. In doing so, the Karches court indicated that the initial decision-maker in the regulatory process must reach a definitive decision which actually inflicts a concrete injury. Id., at 14-15. In light of Karches, the Ninth Appellate District has concluded that a claim for damages based upon an alleged taking cannot go forward when the governmental entity has only told the property owner that he must meet certain requirements before a building permit will be granted. MorelandHomes, Inc. v. City of North Ridgeville (Jan. 18, 1989), 9th Dist. No. 4418, 1989 Ohio App. LEXIS 189. Similarly, this court has concluded that a declaratory judgment claim as to the enforcement of a zoning ordinance should have been dismissed when the property owner withdrew his permit application before a final decision could be rendered by the planning commission. Dubeanskyv. City of Mentor 11th Dist. No. 96-L-049, 1997 Ohio App. LEXIS 5328.
 {¶ 20} In the instant case, the evidentiary materials before this court readily demonstrate that the Planning Commission properly rendered a decision expressly denying relator's application to be allowed to build the proposed home. Under most circumstances, this court would agree that a governmental entity's denial of a request to build constitutes a final resolution of the matter before the commission. However, the evidentiary materials in this instance further show that the Planning Commission's decision did not turn upon its application of the City's zoning regulations to relator's parcel. Rather, the decision to deny relator's application was predicated solely upon the existence of the covenants in the subdivision declaration.
 {¶ 21} In relation to the foregoing point, this court would emphasize that our Supreme Court has defined a "restrictive covenant" as a private agreement, usually set forth in a deed or lease, which places an express limit on the use of real property.City of Canton v. State, 95 Ohio St.3d 149, 2002-Ohio-2005. Our review of the copy of the subdivision declaration contained in respondents' evidentiary materials establishes that some of its provisions clearly satisfy the foregoing definition. Thus, the covenants in the declaration do not constitute laws or regulations which were enacted by the City of Mentor. To this extent, the Planning Commission was not enforcing any governmental regulation when it rendered its decision
 {¶ 22} In light of the private nature of the subdivision declaration, it is arguable that the Planning Commission acted improperly in trying to interpret the declaration and basing its subsequent decision on that interpretation. Without commenting upon the propriety of the Commission's decision, this court would indicate that any error in the procedure or analysis of the Commission does not distract from the fact that it never addressed the issue of whether relator was entitled to build a single-family home on his land under the Mentor zoning laws. As a result, the Commission's decision did nothing more than to inform relator that a decision concerning the application of the Mentor zoning laws to his property would not be rendered until the issue of the effect of the subdivision declaration was properly resolved. When viewed in this manner, the Commission's decision does not constitute a final determination under the WilliamsonCty. precedent.
 {¶ 23} Furthermore, the private nature of the covenants in the declaration dictates that, even if the Planning Commission could properly consider the covenants in rendering its decision, its interpretation would not be binding on relator. The proper forum for relator to litigate the question of the interpretation and application of the subdivision declaration would be the Lake County Court of Common Pleas in a declaratory judgment action. If relator was able to obtain a favorable judgment in such an action, the new interpretation would be binding on the Planning Commission in any subsequent proceeding on a new application for a permit to build.
 {¶ 24} As an aside, this court would note that we usually have the authority to interpret any legal document as part of a mandamus case. Nevertheless, even if we were to determine the proper interpretation of any covenant in the subdivision declaration, that would not settle the issue of whether a taking has occurred in this instance. That is, if we were to hold that the provisions of the declaration did not apply to relator's parcel, this would simply mean that the Planning Commission would then have to make a final decision on whether relator is allowed to build the proposed home under the City's zoning regulations. Under these circumstances, it would be inappropriate for us to rule upon the "covenant" issue.
 {¶ 25} As a general principle, the moving party in a summary judgment exercise is entitled to prevail when he can demonstrate that: (1) there does not exist any genuine issues of material fact remaining to be litigated; (2) the nature of the evidentiary materials are such that, even when those materials are construed in a manner most favorable to the non-moving party, a reasonable person could only reach a conclusion adverse to that party; and (3) the moving party is entitled to judgment as a matter of law.Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385. In applying this standard, this court has stated that a material fact is one which is relevant to the outcome of the matter pursuant to the governing statutory or case law. Hogan v.Cincinnati Financial Corp., 11th Dist. No. 2003-T-0034, 2004-Ohio-3331.
 {¶ 26} Under the Williamson Cty. precedent, the primary material fact in the instant case concerns the nature of the decision rendered by the Planning Commission. Again, our review of respondents' evidentiary materials demonstrates that the Commission did not apply Mentor zoning law in denying relator's application. Accordingly, since the Commission has not rendered a final decision concerning whether the Mentor zoning laws would act to prohibit relator from constructing the proposed home, the facts before this court show that a taking of relator's parcel has not yet occurred. In turn, it follows that, under the facts of this case, a writ of mandamus will not lie to compel respondents to convince an appropriation proceeding in regard to relator's parcel.
 {¶ 27} In light of the foregoing analysis, respondents' motion for summary judgment is hereby granted. It is the order of this court that judgment is hereby entered in favor of respondents as to relator's entire mandamus petition.
Ford, P.J., Christley, J., O'Neill, J., concur.