[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. New Wen, Inc. v. Marchbanks,* Slip Opinion No. 2020-Ohio-63.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-63

THE STATE EX REL. NEW WEN, INC., D.B.A. WENDY'S *v.* MARCHBANKS, DIR., ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. New Wen, Inc. v. Marchbanks,* Slip Opinion No. 2020-Ohio-63.]**

*Mandamus—Writ of mandamus sought to compel state department of transportation to commence appropriation proceedings for alleged taking of property when state closed intersection where county road and limited-access highway formerly met—State's closure of intersection that was shown as "point of access" on original project plans when limited-access highway was created deprived business near intersection of right of access—Writ granted.*

(No. 2017-0813—Submitted May 7, 2019—Decided January 15, 2020.)

IN MANDAMUS.

_____

**FRENCH, J.**

{¶ 1} Relator, New Wen, Inc., d.b.a. Wendy's, seeks a writ of mandamus to compel the Ohio Department of Transportation and its director, Jack Marchbanks[1] (collectively, "ODOT"), to commence appropriation proceedings for an alleged taking of its real property. We previously granted judgment on the pleadings and dismissed the claims brought by the other relators—Speedway, L.L.C., and Bob Evans Restaurants, L.L.C., and BER Real Estate Investments I, L.L.C (collectively, "Bob Evans")—in this action. *State ex rel. Speedway, L.L.C. v. Wray*, 152 Ohio St.3d 1418, 2018-Ohio-923, 93 N.E.3d 1000. For the reasons that follow, we now grant New Wen's request for a writ of mandamus.

## I. Background

### A. *Summary of the issue presented*

{¶ 2} State Route 16 ("S.R. 16") generally travels east-west through Licking County, in large part as a four-lane, limited-access, divided highway. Until late 2016, Cherry Valley Road, a.k.a. County Road 128 ("C.R. 128"), a north-south road, intersected S.R. 16 at a four-way, signalized intersection that allowed traffic to enter or exit either road in all directions. ODOT permanently closed the intersection shortly after Thanksgiving in 2016.

{¶ 3} BER Real Estate Investments I, L.L.C., owns the parcel on the southeast corner of the former intersection and leases the property to Bob Evans Restaurants, L.L.C., which operates a Bob Evans restaurant on the site. Speedway, L.L.C., owns the parcel on the southwest corner, on which it operates a Speedway convenience store and fuel center. Other business entities own properties near the former intersection.

---

1. Under S.Ct.Prac.R. 4.06(B), Jack Marchbanks, the current director of the Ohio Department of Transportation, is automatically substituted for Jerry Wray, the former director, as a party to this action.

{¶ 4} New Wen owns the parcel on the northwest corner of the former intersection of S.R. 16 and C.R. 128, on which it operates a Wendy's restaurant. The Wendy's is accessible to cars via an access point on C.R. 128. There is no access point permitting entry to the Wendy's parking lot directly from S.R. 16. Due to this configuration, from 1992, when the Wendy's restaurant opened, to November 2016, when the intersection closed, drivers could access the Wendy's from S.R. 16 by turning north on C.R. 128.

{¶ 5} As a result of ODOT's closure of the intersection, C.R. 128 no longer runs straight across S.R. 16. As drivers on C.R. 128 approach S.R. 16 from either the north or the south, they encounter a dead-end immediately before S.R. 16. On the north side, C.R. 128 dead-ends after the access point to the Wendy's parking lot; ODOT removed the short stretch of C.R. 128 that ran between that access point and S.R. 16, planted grass, erected a fence, and placed a guardrail just south of the Wendy's access point. Drivers on S.R. 16 can likewise no longer turn onto C.R. 128; S.R. 16 simply passes through the point where the intersection used to be. As a replacement for this closure, ODOT opened a new, limited-access interchange approximately 0.4 miles east of C.R. 128. Drivers on S.R. 16 may now reach the portion of C.R. 128 north of S.R. 16 by exiting at that new interchange, proceeding north on a new road called Thornwood Crossing, and taking a local road that parallels S.R. 16.

{¶ 6} ODOT's work did not directly affect the entrance to the Wendy's parking lot from C.R. 128. But as a practical matter, the changes require drivers to travel a longer distance to access the Wendy's from S.R. 16. Prior to the changes, a driver traveling east on S.R. 16 could reach the Wendy's by simply turning left onto C.R. 128 and then turning left again into the Wendy's parking lot—a distance of 0.22 miles from the point where the driver could first see the Wendy's site. After the changes, a driver has to exit S.R. 16 at the new interchange, travel to C.R. 128 using local roads, and then approach the Wendy's from the north—a distance of 1.6

miles. Similarly, the distance that drivers traveling west on S.R. 16 must cover to reach the Wendy's increased from 0.26 miles before the changes to 1.38 miles, using the new interchange and local roads. The distance that drivers leaving the Wendy's must travel to reach S.R. 16 has increased to a similar degree.

{¶ 7} The legal question this case presents is whether ODOT's closure of the access point at the junction of S.R. 16 and C.R. 128 constitutes a compensable taking that requires ODOT to commence appropriation proceedings.

## B. *The evidence in the record*

{¶ 8} In 1960, ODOT's predecessor, the Ohio Department of Highways, recorded a centerline plat in the office of the Licking County Recorder showing the proposed route for a limited-access east-west highway that would run through portions of Licking County. That highway—S.R. 16—would bisect C.R. 128.

{¶ 9} The northwest corner parcel bounded by S.R. 16 and C.R. 128 was part of a larger property owned by Alice Virginia Jones Olmsted, a.k.a. Alice Virginia Jones LaRue. In April 1961, the state paid Olmsted $23,299 for a permanent highway easement across the southern portion of her property, for the construction of S.R. 16 (the "S.R. 16 Easement"). The state and Olmsted agreed that the payment was compensation for the land taken and for all resulting damages. The S.R. 16 Easement conveyance included an express term by which Olmsted

> specifically waive[d] and release[d] any and all right or rights of direct access, or claims thereof, to the present highway improvement to be constructed, or to the ultimate highway improvement to be constructed in the future, as called for by the plans herein referred to, and the execution of this conveyance shall act automatically as a waiver to the State of Ohio in the elimination of any direct access to said highway either for present or future construction.

4

{¶ 10} At the same time, as part of the S.R. 16 construction project, the state purchased a second easement over the eastern portion of Olmsted's property (the "C.R. 128 Easement"). This small easement involved a parcel that was already in large part subject to a preexisting easement for the right of way for C.R. 128. The S.R. 16 project plans identified a "Point of Access" at the juncture of the C.R. 128 Easement and the S.R. 16 Easement, which, according to the affidavit of an ODOT administrator, was created "[i]n order to permit the right of the traveling public within the right of way of County Road 128 * * * southbound to lawfully access ODOT's new limited access right of way."

{¶ 11} New Wen (through a predecessor entity) purchased a portion of Olmsted's property located immediately to the north of the S.R. 16 Easement, on which it opened the Wendy's restaurant. Although New Wen's property does not include any part of the land covered by the S.R. 16 Easement, it does include part of the land covered by the C.R. 128 Easement. Specifically, the eastern border of New Wen's property lies at the centerline of C.R. 128, so the portion of the C.R. 128 Easement to the west of the centerline is on New Wen's property.

## C. Procedural history

{¶ 12} In June 2017, New Wen, Speedway, and Bob Evans filed a five-count complaint for a writ of mandamus to compel ODOT to initiate appropriation proceedings. ODOT filed a motion for judgment on the pleadings.

{¶ 13} On March 14, 2018, we granted the motion in part and denied it in part. 152 Ohio St.3d 1418, 2018-Ohio-923, 93 N.E.3d 1000. After dismissing all claims brought by the other relators, we granted an alternative writ of mandamus only as to New Wen's claim for a physical taking. The parties submitted briefs and evidence, the Ohio Council of Retail Merchants filed amicus briefs in support of New Wen, and we granted New Wen's request for oral argument.

## II. Legal analysis

{¶ 14} The Takings Clauses in the Ohio and United States Constitutions "prevent government from 'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " *State ex rel. R.T.G., Inc. v. State*, 98 Ohio St.3d 1, 2002-Ohio-6716, 780 N.E.2d 998, ¶ 33, quoting *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). So when private property is taken for a public use, the owner must be paid compensation, "and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner." Ohio Constitution, Article I, Section 19.

{¶ 15} When a property owner alleges the taking of private property, mandamus is the correct action to force the state to institute appropriation proceedings. *State ex rel. Wasserman v. Fremont*, 140 Ohio St.3d 471, 2014-Ohio-2962, 20 N.E.2d 664, ¶ 22, citing *State ex rel. Shemo v. Mayfield Hts.*, 95 Ohio St.3d 59, 63, 765 N.E.2d 345 (2002). To be entitled to a writ of mandamus, a party must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Mars Urban Solutions, L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 155 Ohio St.3d 316, 2018-Ohio-4668, 121 N.E.3d 311, ¶ 6. As in any mandamus action, a party seeking to compel appropriation proceedings must satisfy these three requirements. *Wasserman* at ¶ 22-23.

{¶ 16} To establish a taking, New Wen must demonstrate "a substantial or unreasonable interference with a property right." *State ex rel. OTR v. Columbus*, 76 Ohio St.3d 203, 206, 667 N.E.2d 8 (1996). The interference "may involve the actual physical taking of real property, or it may include the deprivation of an intangible interest in the premises." *Id.*

{¶ 17} The evidence here shows that a taking of a property right occurred. A landowner's right of access to abutting public roadways is "[o]ne of the elemental rights growing out of the ownership of a parcel of real property." *Id.* at 207. An abutting property owner possesses "not only the right to the use of the highway in common with other members of the public, but also a private right of easement for the purpose of ingress and egress to and from his property." *State ex rel. Merritt v. Linzell*, 163 Ohio St. 97, 126 N.E.2d 53 (1955), paragraph one of the syllabus. The state may not take away, destroy or substantially impair that right of access without providing compensation. *Id.*

{¶ 18} Without question, ODOT has eliminated New Wen's property right of access to S.R. 16 and the taking physically occurred on New Wen's property. A landowner who conveys an easement continues to own the underlying property and retains rights in the easement area. *Phifer v. Cox*, 21 Ohio St. 248, 255 (1871) (when the public had an easement for a county road, "the establishment of the road did not extinguish [the owner's] title in the land over which it passed"). New Wen is able to assert a physical-taking claim because the eastern edge of its property extends to the centerline of C.R. 128 and is covered by the C.R. 128 Easement. The removal of the portion of C.R. 128 sitting between the access point to the Wendy's parking lot and S.R. 16 therefore occurred partly on New Wen's property.

{¶ 19} The question is whether the closure constitutes a *compensable* taking of a property right. ODOT contends that New Wen is not entitled to additional compensation because its predecessor-in-title waived her right of direct access to S.R. 16 at the time the easement for S.R. 16 was created. But the claim that Olmsted categorically released her rights is not accurate. The easement document instead provides:

[Olmsted] does hereby specifically waive and release any and all right or rights of direct access, or claims thereof, to the present

highway improvement to be constructed, or to the ultimate highway improvement to be constructed in the future, *as called for by the plans herein referred to*, and the execution of this conveyance shall act automatically as a waiver to the State of Ohio in the elimination of any direct access to said highway either for present or future construction.

(Emphasis added.) The waiver of direct access was conditional: it was based on— and expressly incorporated—the S.R. 16 project plans. And those plans identified a "Point of Access" at the juncture of the C.R. 128 Easement and the S.R. 16 Easement. This was done, according to the affidavit of an ODOT administrator, "[i]n order to permit the right of the traveling public within the right of way of County Road 128 aka Cherry Valley Road southbound to lawfully access ODOT's new limited access right of way."

{¶ 20} The compensation paid in 1961 to Olmsted *could not* have included damages for the loss of all access to S.R. 16, because that access was not lost at the time and the project plans expressly guaranteed it. Nor would Olmsted have been entitled to compensation for the hypothetical possibility of a future closure, because damages awarded in an eminent-domain action "must be actual and not merely speculative or contingent," *Masheter v. Blaisdell*, 30 Ohio St.2d 8, 12, 282 N.E.2d 42 (1972). If, however, after an initial taking, the state imposes new burdens on the property in the future that were not contemplated in the original plans, the property owner may be entitled to additional compensation. *Id*. The finder of fact may award damages that are "reasonably foreseeable" and that "might reasonably be expected to occur in the intended use of the property." *Id*. at 11. In the absence of evidence of reasonably foreseeable damages, the compensable rights of the abutting property owner are established by "the present intended use of the land

taken * * * for highway purposes, as revealed by the plans and specifications for the improvement." *Id*. at paragraph two of the syllabus; *see id*. at 11.

{¶ 21} That is precisely the situation presented here. The intersection closure requires a second round of compensation because the express preservation of a point of access in both the easement agreement and project plans contradicts any presumption of foreseeability. A holding to the contrary would place landowners in an untenable position: a lost property right that is speculative (and therefore noncompensable) at the time of an initial taking suddenly becomes, at the time of the second taking, retroactively foreseeable (and therefore, again, noncompensable).

{¶ 22} ODOT contends that it does not owe a second round of compensation because the closure of the point of access occurred entirely within the physical limits of the preexisting easement for S.R. 16 and because the purpose of the closure—to improve the flow of traffic along S.R. 16—was consistent with the original purposes of that easement. When a public entity purchases a highway easement, compensation is "presumed to have been paid for all purposes consistent with the right to travel and the improvement of the road," and if a subsequent use does not exceed those purposes, "the abutting landowner is presumed to have received compensation therefor when his land was appropriated or dedicated." *Sears v. Hopley*, 103 Ohio St. 46, 48, 132 N.E. 25 (1921). But a review of our prior decisions shows that the holding in *Sears* does not apply to these facts.

{¶ 23} The leading case for purposes here is *Ziegler v. Ohio Water Serv. Co.*, 18 Ohio St.2d 101, 247 N.E.2d 728 (1969). *Ziegler* involved the installation of an underground water pipeline in a preexisting highway easement. This court held that the landowner was entitled to no additional compensation because the water pipeline did not impose any new substantial burden on the landowner that was not already present by virtue of the highway easement. *Id*. at 105-106.

**{¶ 24}** To see why *Ziegler* is inapplicable to the present case, it is helpful to begin with a foundational concept of property law. " 'A common idiom describes property as a "bundle of sticks"—a collection of individual rights which, in certain combinations, constitute property.' " *Dispatch Printing Co. v. Recovery Ltd. Partnership*, 2015-Ohio-381, 28 N.E.3d 562 ¶ 51 (10th Dist.), quoting *United States v. Craft*, 535 U.S. 274, 278, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002). State law determines which sticks are in a person's bundle. *Craft* at 278. Under Ohio law, for example, the right to withdraw groundwater is "an essential stick in the bundle of rights that is part of title to property," *McNamara v. Rittman*, 107 Ohio St.3d 243, 2005-Ohio-6433, 838 N.E.2d 640, ¶ 22, but the right to demolish a building and construct a new one is not, *State ex rel. BSW Dev. Group v. Dayton*, 83 Ohio St.3d 338, 343, 699 N.E.2d 1271 (1998).

**{¶ 25}** The "right to exclude others" is "one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Kaiser Aetna v. United States*, 444 U.S. 164, 176, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979); *see also Dispatch Printing Co.* at ¶ 51, quoting Kades, *Property Rights and Economic Development*, 45 Wm. & Mary L.Rev. 815, 818 (2004) (noting that the bundle of sticks constitutes " 'various combinations of the rights to exclude, to use, and to alienate' "). The landowner in *Ziegler* lost her right-to-exclude stick when the original highway easement arose; the installation of the water pipeline under the same stretch of land did not take any of her remaining "sticks." The same is true in other cases. *See Centel Cable Television Co. of Ohio, Inc. v. Cook*, 58 Ohio St.3d 8, 567 N.E.2d 1010 (1991), paragraphs one and two of the syllabus (coaxial-cable-television wires strung on utility poles in an existing easement); *Friedman Transfer & Constr. Co. v. Youngstown*, 176 Ohio St. 209, 198 N.E.2d 661 (1964), syllabus (water pipes installed on a bridge subject to an existing highway easement).

**{¶ 26}** This case is different. ODOT did not merely run a different form of traffic across an existing roadway. It helped itself to a second stick from New

Wen's bundle, one that the original easement agreement had left intact—the right of access to S.R. 16. Compensation for the loss of that property right has never been paid.

{¶ 27} Finally, the dissent invokes R.C. 5511.02 to suggest that New Wen (as Olmsted's successor-in-title) has no right of access to S.R. 16 based on S.R. 16's designation as a limited-access highway and because Olmsted received compensation. ODOT, however, never presented this argument, and it is not the proper role of this court to develop a party's arguments. *Bronx Park S. III Lancaster, L.L.C. v. Fairfield Cty. Bd. of Revision*, 153 Ohio St.3d 550, 2018-Ohio-1589, 108 N.E.3d 1079, ¶ 10. And even if this argument were properly before us, it is not persuasive.

{¶ 28} At the time Olmsted was compensated, the fourth paragraph of R.C. 5511.02 defined a "limited access highway" as "a highway especially designed for through traffic and over which abutting property owners have no easement or right of access by reason of the fact that their property abuts upon such highway, and access to which may be allowed only at highway intersections designated by the director." (The same language now appears in R.C. 5511.02(D), *see* 2017 Sub.H.B. No. 26.) Notwithstanding that definition, the law recognized that adjacent property owners *did* have some access rights with respect to limited-access highways. In 1961, R.C. 5511.02 required (and it continues to require) the state to pay the owner of adjacent property if a limited-access designation extinguishes an existing access point. *See* the second paragraph of R.C. 5511.02 that was in effect in 1961, which is now R.C. 5511.02(B), 2017 Sub.H.B. No. 26 ("Where an existing highway, in whole or part, has been designated as, or included within, a 'limited access highway' or 'freeway,' existing easements of access may be extinguished by purchase, gift, agreement, or by condemnation"); *see also Rothwell v. Linzell*, 163 Ohio St. 517, 519, 526-527, 127 N.E.2d 524 (1955) (construing the identically worded General Code predecessor of R.C. 5511.02(B) and holding that the state

must compensate a property owner if the designation of a limited-access highway extinguishes a right of access).

{¶ 29} So the question is not merely whether the state paid compensation to Olmsted to extinguish her right of direct access—it plainly did—but whether one aspect of the compensation she received was the reservation of a separate property right of indirect access via C.R. 128. The dissent *assumes* that all her rights were extinguished and that she had no further legal interest in accessing S.R.16. But that assumption does not account for the fact that any calculation of her loss at the time would have contemplated the ongoing existence of indirect access to S.R.16, as designated in the project plans and incorporated by reference into the easement document. In plain terms, simply recognizing that S.R. 16 is a limited-access highway does not further the analysis or answer the question before the court one way or the other.

{¶ 30} New Wen has shown, by clear and convincing evidence, that ODOT's closure of the intersection deprived New Wen of access to S.R. 16, a right of access that the original plans and the easement agreement expressly preserved, and that it has not received compensation for the taking. The right of property ownership is a fundamental right. *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, ¶ 52. And no right of property ownership is more essential than the requirement, which both the Ohio and United States Constitutions impose, that the state shall not take private property for public use except upon payment of just compensation. Article I, Section 19, Ohio Constitution; Fifth and Fourteenth Amendments to the United States Constitution; *Shemo*, 95 Ohio St.3d at 63, 765 N.E.2d 345. To vindicate that right and to give effect to those constitutional safeguards, we grant a writ of mandamus to compel ODOT to commence appropriation proceedings and pay compensation for the taking of the property at issue in this case.

Writ granted.

KENNEDY, FISCHER, and DEWINE, JJ., concur.

KENNEDY, J., concurs, with an opinion joined by DEWINE, J.

O'CONNOR, C.J., dissents, with an opinion joined by DONNELLY and STEWART, JJ.

_____

**KENNEDY, J., concurring.**

{¶ 31} I join the majority opinion and agree that relator, New Wen, Inc., is entitled to a writ of mandamus but write separately to address the dissenting opinion's contention that Alice Virginia Jones Olmsted fully waived her right of access to State Route 16 ("S.R. 16"). When the "Easement for Highway Purposes" for S.R. 16 (the "S.R. 16 Easement") was executed by Olmsted in 1961, the plain and unambiguous language of R.C. 5511.02 granted the state's director of highways discretion on how to exercise his authority and power regarding access to limited-access highways and the S.R. 16 Easement agreement prepared by the Ohio Department of Highways limited Olmsted's waiver of her property rights "as called for by the plans" that were "referred to" in the agreement. For those reasons, New Wen has demonstrated that the S.R. 16 Easement agreement expressly preserved Olmsted's right of access to S.R. 16 and that the state's closure of the intersection at issue in this case deprived New Wen—Olmsted's successor-in-title—of its right of access. Therefore, I concur that New Wen is entitled to a writ of mandamus to compel the Ohio Department of Transportation and its director, Jack Marchbanks (collectively, "ODOT"), to commence appropriation proceedings for a taking of its property right.

{¶ 32} The version of R.C. 5511.02 in effect at the time the S.R. 16 Easement agreement was executed in 1961 was the successor statute to G.C. 1178-21 and was substantially the same. *See Rothwell v. Linzell*, 163 Ohio St. 517, 518-520, 127 N.E.2d 524 (1955). The first paragraph of R.C. 5511.02 at that time (now R.C. 5511.02(A)(1), *see* 2017 Sub.H.B. No. 26) authorized the Ohio director of

highways (now the Ohio director of transportation) to "lay out, establish, acquire, open, construct, improve, maintain, regulate, vacate or abandon 'limited access highways.' " The second paragraph of R.C. 5511.02 at that time (now R.C. 5511.02(B), *see* 2017 Sub.H.B. No. 26) provided: "Where an existing highway * * * has been designated as * * * a 'limited access highway' * * *, existing easements of access may be extinguished by purchase, gift, agreement or by condemnation." And the fourth paragraph of R.C. 5511.02 at that time (now R.C. 5511.02(D), *see* 2017 Sub.H.B. No. 26) provided: "A 'limited access highway' * * * is a highway especially designed for through traffic and over which abutting property owners have no easement or right of access by reason of the fact that their property abuts upon such highway, and access to which may be allowed only at highway intersections designated by the director."

{¶ 33} Relying on R.C. 5511.02, the dissenting opinion asserts that Olmsted, as an abutting property owner, fully waived her right of access to S.R. 16. However, the plain language of R.C. 5511.02 does not support this assertion. Moreover, our caselaw does not support the dissenting opinion's interpretation of the statutory language.

{¶ 34} In *Rothwell*, this court interpreted G.C. 1178-21 in a manner that is relevant here due to that statute's essential similarities to R.C. 5511.02. This court held that G.C. 1178-21 did "*not require* the Director of Highways to extinguish all easements of access to a limited access highway." (Emphasis sic.) *Rothwell* at paragraph five of the syllabus. Rather, the statute "merely *authorize[d] and empower[ed]* the director with respect to [the] extinguishment, construction, and prevention of access." (Emphasis sic.) *Id.* Finally, this court held that "*[t]he extent to which he exercise[d] that authority and power [was] left to his reasonable discretion*." (Emphasis added.) *Id.* Therefore, the director of highways had discretion to exercise as much or as little authority and power as he saw fit regarding access to a limited-access highway.

{¶ 35} The facts are not in dispute. In this case, the Ohio Department of Highways prepared the S.R. 16 Easement agreement, which limited Olmsted's waiver of her "right or rights of direct access, or claims thereof * * *, *as called for by the plans herein referred to*." (Emphasis added.) And those plans identified a "Point of Access" at the juncture of the S.R. 16 Easement and a second easement for County Road 128 (the "C.R. 128 Easement") purchased by the state. Therefore, the state's taking of Olmsted's right of access was limited to that which the plans called for and it was only that taking that Olmsted was compensated for. Logically, when New Wen's predecessor entity purchased the portion of Olmsted's property that included part of the land covered by the C.R. 128 Easement, it purchased the point of access "as called for by the plans."

{¶ 36} An owner of real property holds title "subject to a perpetual optional right of his government to acquire that property for public use," but the government's taking of the property for public use will be at the cost of full compensation. *Rothwell*, 163 Ohio St. 517, 127 N.E.2d 524, at paragraph seven of the syllabus. Moreover,

> [w]herever an easement of access to a highway by an abutting property owner is extinguished, then, to the extent of the inevitable resulting elimination of potential interference with travel on the highway there will necessarily be an *increase of the right of use* of the highway by the public; and the taking of such an easement of access will therefore be a taking for public use within the meaning of those words as used in Section 19 of Article I of the Ohio Constitution.

(Emphasis sic.) *Id.* at paragraph six of the syllabus.

{¶ 37} Because the state could not have compensated Olmsted for the loss of all access to S.R. 16 in 1961 in that the S.R. 16 Easement agreement and the

plans for S.R. 16 expressly guaranteed access and because R.C. 5511.02 allowed the director of highways reasonable discretion in the exercise of his authority and power regarding access to a limited-access highway, ODOT has deprived New Wen of its retained right of access to S.R. 16 without providing compensation. Therefore, I concur that New Wen is entitled to a writ of mandamus to compel ODOT to commence appropriation proceedings for a taking of its property right.

DeWine, J., concurs in the foregoing opinion.

_____

**O'Connor, C.J., dissenting.**

{¶ 38} When the predecessor of the Ohio Department of Transportation ("ODOT") filed the centerline plat for State Route 16 ("S.R. 16") in 1960, S.R. 16 was designated as a "limited-access highway." That designation carried with it certain implications for abutting property owners like Alice Virginia Jones Olmsted, who owned the property at issue in this case at that time. Specifically, pursuant to state law, abutting property owners such as Olmsted could have no right of direct access to the limited-access highway by reason of the fact that their property abutted the highway. *See* the fourth paragraph of the version of R.C. 5511.02 in effect at that time (now R.C. 5511.02(D), *see* 2017 Sub.H.B. No. 26). That makes sense, of course, because a limited-access highway is "a highway especially designed for *through traffic*" (emphasis added), *id*. Olmsted therefore fully waived her right of access to S.R. 16 when she agreed to grant ODOT's predecessor an easement for the highway (the "S.R. 16 Easement"), and she received full compensation for that waiver as part of that agreement. As a result, relator, New Wen, Inc., did not succeed to that right when it became the owner of the property, and it cannot base a claim for a taking on such a right.

{¶ 39} The majority does not acknowledge the unconditional nature of Olmsted's waiver. Instead, it holds that New Wen may base its claim on the loss of its right of access to S.R. 16. That is remarkable enough on its own. But the

holding of the majority is not limited to this particular case. Today's decision creates new standards that will have a significant impact on ODOT's ability to maintain a safe highway system. Now, any time ODOT seeks to perform work on a limited-access highway, owners of land abutting the highway will be able to assert claims for a taking that they could not assert before. These new claims, in turn, will undermine ODOT's ability to keep our limited-access highways safe. Rather than go down that path, I would apply established law and hold that New Wen is not entitled to a writ of mandamus compelling the initiation of appropriation proceedings.

## I. The Majority Incorrectly Holds that New Wen Retained a Right of Access to S.R. 16

{¶ 40} The majority states initially that the property right at issue here is the right of a property owner to have access to a road abutting the owner's property. *See State ex rel. Merritt v. Linzell*, 163 Ohio St. 97, 126 N.E.2d 53 (1955), paragraph one of the syllabus. But the notion that Olmsted (even after she had granted the S.R. 16 Easement) retained a right of access to S.R. 16 that is capable of forming the basis of New Wen's claim for a taking is completely wrong.

{¶ 41} When Olmsted granted the S.R. 16 Easement in 1961, S.R. 16 had been designated a limited-access highway, and at that time, the fourth paragraph of R.C. 5511.02 (now R.C. 5511.02(D), 2017 Sub.H.B. No. 26) clearly stated:

> A "limited access highway" * * * is a highway especially designed for through traffic *and over which abutting property owners have no easement or right of access by reason of the fact that their property abuts upon such highway*, and access to which may be allowed only at highway intersections designated by the director.

(Emphasis added.) That statutory language remains exactly the same today. *See also Rothwell v. Linzell*, 163 Ohio St. 517, 519-520, 127 N.E.2d 524 (1955).

{¶ 42} Olmsted at that time waived her right of direct access to S.R. 16 in the agreement she signed for the S.R. 16 Easement, which provides:

> [Olmsted] does hereby specifically waive and release any and all right or rights of direct access, or claims thereof, to the present highway improvement to be constructed, or to the ultimate highway improvement to be constructed in the future, as called for by the plans herein referred to, and the execution of this conveyance shall act automatically as a waiver to the State of Ohio in the elimination of any direct access to said highway either for present or future construction.

Consequently, when ODOT's predecessor compensated Olmsted in exchange for the S.R. 16 Easement, part of that compensation was for Olmsted's specific "waive[r] and release [of] any and all right or rights of direct access, or claims thereof, to [S.R. 16]."

{¶ 43} Recognizing this, the majority acknowledges that Olmsted *did* waive her right of direct access. But it also claims that she was granted a separate right of access at the time she did so. The majority takes the position that because the project plans referred to in the S.R. 16 Easement agreement included a point of access at the juncture of County Road 128 ("C.R. 128") and S.R. 16, Olmsted's waiver of her right to direct access to S.R. 16 "was conditional." Majority opinion at ¶ 19. According to the majority, "the project plans expressly guaranteed," *id.* at ¶ 20, that Olmsted would be able to access S.R. 16 indirectly, *from C.R. 128*, and that guarantee equates to a "separate" legal property right that can form the basis of a claim for a taking. *Id.* at ¶ 29.

18

{¶ 44} This analysis is wrong for several reasons. First, the majority confuses the preservation of the physical intersection with the preservation of a property right. Although the project plans for S.R. 16 mentioned the physical intersection at the juncture of C.R. 128 and S.R. 16, they cannot be understood as having preserved for Olmsted a *property right* of access to S.R. 16—whether through the intersection shown in the plans or otherwise. The majority points to no clear language to that effect in either of the easements granted by Olmsted that are mentioned in the majority opinion. It simply assumes that such a right must have been preserved because of what it presumes the parties foresaw for S.R. 16 when they agreed to compensation in 1961. That is an odd way to find the reservation of a property right. It also misapprehends the foreseeability of ODOT's actions here, as explained further below.

{¶ 45} Second, the evidence here also shows that the intersection was not included for the purpose of guaranteeing *Olmsted* in particular a route by which she could quickly access S.R. 16 from her property. Rather, according to the affidavit of an ODOT administrator, the intersection was included in the plans "[i]n order to permit the *right of the traveling public* within the right of way of County Road 128 * * * southbound to lawfully access ODOT's new limited access right of way." (Emphasis added.)

{¶ 46} The compensation Olmsted received in 1961 therefore included compensation for Olmsted's waiver of her *property right* of direct access to S.R. 16, even though the physical intersection remained, and Olmsted did not retain a separate property right to access S.R. 16 indirectly via C.R. 128. And New Wen could not have acquired from Olmsted any greater property right than what she had to convey.

{¶ 47} The implications of the majority's holding are significant. The majority opinion will surely be read as providing that owners of land abutting a limited-access highway may retain a right of access to the highway through an

easement, notwithstanding an express waiver of that right. And once that occurs, *any* easement that can be read to have preserved a right of access—despite the absence of language to that effect—will entitle the landowner to compensation any time ODOT engages in work affecting the landowner's access to the highway. ODOT's routine work maintaining and upgrading limited-access highways will therefore become much more cumbersome and expensive.

**II. The Majority Incorrectly Holds that ODOT's Work Was Not Foreseeable**

{¶ 48} The majority also believes that New Wen is entitled to compensation because ODOT's closure of the intersection was not foreseeable. It quotes *Masheter v. Blaisdell*, 30 Ohio St.2d 8, 11, 282 N.E.2d 42 (1972), for the proposition that damages may be awarded in an appropriation proceeding only for uses of land that are " 'reasonably foreseeable' " and that " 'might reasonably be expected to occur in the intended use of the property.' " Majority opinion at ¶ 20. It then relies on the notion that damages should be based on " 'the present intended use of the land taken * * * for highway purposes, as revealed by the plans and specifications for the improvement.' " *Id.*, quoting *Blaisdell* at paragraph two of the syllabus. Based on these concerns, it claims that New Wen is entitled to compensation, notwithstanding the compensation that had been provided to Olmsted in 1961, because "the express preservation of a point of access in both the [S.R. 16 Easement] agreement and project plans contradicts any presumption" that ODOT's closure of the intersection was foreseeable when Olmsted received compensation back in 1961. *Id.* at ¶ 21.

{¶ 49} I disagree. In my view, it is always foreseeable that an access point to a limited-access right of way such as S.R. 16 (which was repeatedly and explicitly declared to be a "limited access" highway in the project plans) may be subject to certain future upgrades—for example, by replacing the access point with a new interchange nearby as in the circumstances present here.

{¶ 50} The inclusion of a point of access in the project plans does not change this analysis. The focus of our holding in *Blaisdell* was on whether a use is foreseeable. We pointed to the plans and specifications as evidence helping to *identify* the permissible use of the easement—which here is for a multilane, limited-access highway. But we did *not* hold in *Blaisdell* that the plans and specifications prescribe the precise manner in which that use must be performed down to the last detail or that *any* future deviation from the plans and specifications constitutes a new use requiring additional compensation. We also recognized that in addition to the plans and specifications, "evidence of other reasonably foreseeable damages" could be taken into account, as well. *Blaisdell* at paragraph two of the syllabus.

{¶ 51} Overall, it is clear that ODOT has not deviated from the original use of the easements here and that the project plans for this project do not constitute a binding commitment by the state to keep the intersection open forever. Indeed, because the plans repeatedly stated that S.R. 16 would be a limited-access highway, which as noted above is expressly designed for through traffic, the potential for the highway to be upgraded to facilitate the flow of through traffic was foreseeable in 1961. I would therefore hold that New Wen's argument that it is entitled to compensation because ODOT's work was not foreseeable is without merit.[2]

{¶ 52} Unfortunately, as with its conclusion that New Wen retains a right of access to S.R. 16, the majority's conclusion that ODOT's work was not foreseeable will have important consequences. The fine details of any plans and specifications referred to in an easement agreement—many of which are, like the plans at issue here, well over 50 years old—now take on a much greater *legal*

---

2. The majority also asserts that holding that ODOT's work was foreseeable "would place landowners in an untenable position" because, in its view, the work would be deemed to be foreseeable "retroactively." Majority opinion at ¶ 21. That is not correct. Such a holding would not change the standards concerning when the state's payment of compensation for a highway appropriation is required. It would simply clarify that when an easement agreement refers to plans and specifications, the foreseeability of future uses of that easement is not limited to the exact use set out in the fine details of the plans and specifications.

significance. And the result will be that whenever ODOT's work maintaining and upgrading limited-access highways so that they are fit for use by the public *today* does not conform to the fine details of old plans, it will be deemed to be an unforeseeable use of the easement that requires the state to pay compensation. The costs of this conclusion will be immense. The majority's failure to consider the implications of its decision is a mistake.

### III. Conclusion

{¶ 53} For these reasons, I would hold that New Wen is not entitled to compensation. I therefore respectfully dissent.

DONNELLY and STEWART, JJ., concur in the foregoing opinion.

_____

Vorys, Sater, Seymour & Pease, L.L.P., Joseph R. Miller, Thomas H. Fusonie, and Daniel E. Shuey, for relator.

Dave Yost, Attorney General, Benjamin M. Flowers, State Solicitor, Diane R. Brey, Deputy Solicitor, and L. Martin Cordero, Eric M. Hopkins, and William J. Cole, Assistant Attorneys General, for respondents.

Vorys, Sater, Seymour & Pease, L.L.P., John M. Kuhl, and Elizabeth S. Alexander, urging granting of the writ for amicus curiae, Ohio Council of Retail Merchants.

_____