[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. US Bank Trust, Natl. Assn. v. Cuyahoga Cty.*, Slip Opinion No. 2023-Ohio-1063.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-1063

THE STATE EX REL. US BANK TRUST, NATIONAL ASSOCIATION, AS TRUSTEE OF AMERICAN HOMEOWNER PRESERVATION TRUST SERIES 2015A+, APPELLANT, *v*. CUYAHOGA COUNTY, APPELLEE.

THE STATE EX REL. US BANK TRUST, NATIONAL ASSOCIATION, AS TRUSTEE OF AMERICAN HOMEOWNER PRESERVATION TRUST SERIES 2015A+, APPELLANT, *v*. LUCAS COUNTY BOARD OF COUNTY COMMISSIONERS, APPELLEE.

THE STATE EX REL. US BANK TRUST, NATIONAL ASSOCIATION, AS TRUSTEE OF AMERICAN HOMEOWNER PRESERVATION TRUST SERIES 2014A, APPELLANT, *v*. SUMMIT COUNTY, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. US Bank Trust, Natl. Assn. v. Cuyahoga Cty.*, Slip Opinion No. 2023-Ohio-1063.]

*Mandamus—Enforcement of tax liens on real property—R.C. Chapter 323—*
*County land-reutilization corporations (i.e., county land banks)—Mortgage*
*holder that did not acquire mortgage for abandoned property until one year*

*after adjudication of foreclosure to enforce tax lien on that property lacks standing to challenge foreclosure proceedings—Mortgage holder and owner of abandoned properties had adequate remedy in ordinary course of law by way of exercising its rights under R.C. Chapter 323 to challenge foreclosure proceedings to enforce tax liens against properties—Courts of appeals' judgments denying writs affirmed.*

(Nos. 2021-1090, 2021-1091, and 2021-1181—Submitted January 10, 2023—

Decided April 4, 2023.)

APPEALS from the Court of Appeals for Cuyahoga County, No. CA 21 110297, 2021-Ohio-2524; the Court of Appeals for Lucas County, No. L-21-1087; and the Court of Appeals for Summit County, No. 29889, 2021-Ohio-3189.

_____

**FISCHER, J.**

### Introduction

{¶ 1} Under Ohio law, a county treasurer shall enforce a tax lien on real property through a foreclosure action, which may result in a sale of the property at auction. If a sale at auction occurs and the price exceeds the amount of the lien, the excess funds paid by the purchaser may go to junior lienholders or to the owner. But if the tax-delinquent property is abandoned, an auction may not be required; the property may be transferred directly to a land bank, free of all liens. When that happens, the county gives up its right to collect the tax debt and any junior lienholders and the owner get nothing.

{¶ 2} The appeals before us involve three properties that were transferred directly to county land banks in 2017 and 2018. Appellant, US Bank Trust, National Association, as Trustee of American Homeowner Preservation Trust Series 2014A (case No. 2021-1181) and 2015A+ (case Nos. 2021-1090 and 2021-1091), owned the foreclosed property in Summit County and claims to have held mortgages on the foreclosed properties in Cuyahoga and Lucas Counties. US Bank alleges that at the

time of the direct transfers, the fair market value of each property was greater than the associated tax lien and that the direct transfers of the properties to the county land banks constituted takings without just compensation. US Bank sought writs of mandamus in the courts of appeals, seeking to compel the initiation of appropriation proceedings under R.C. Chapter 163.

{¶ 3} The courts of appeals dismissed US Bank's complaints, and US Bank appealed the judgments to this court. In each case, we affirm the judgment of the court of appeals.

## Background

*Overview of the statutory process for enforcement of a tax lien on real property*

{¶ 4} R.C. 323.25 requires county treasurers to enforce tax liens on real property. Traditionally, a county enforces a tax lien by obtaining an adjudication of foreclosure and selling the property at auction. *See* R.C. 323.25 and 323.28(A). Since 2006, however, Ohio law has allowed county treasurers to pursue an alternative process to enforce tax liens on "abandoned land," as that term is defined in R.C. 323.65(A). The law now authorizes a court or a county board of revision, under certain circumstances, to order the direct transfer of abandoned property to a "county land reutilization corporation"—i.e., a land bank—without a sale. *See* R.C. 323.28(E), 323.71(A)(1), 323.73(G), and 323.78; 2006 Sub.H.B. No. 294, 151 Ohio Laws, Part IV, 7334.

{¶ 5} In the cases here, the Cuyahoga, Lucas, and Summit County treasurers invoked "the alternative redemption period" under R.C. 323.78(A). When the alternative redemption period is invoked,

> the court or board of revision shall order * * * that the equity of
> redemption and any statutory or common law right of redemption in
> the parcel by its owner shall be forever terminated after the expiration
> of the alternative redemption period [i.e., 28 days after the

adjudication of foreclosure is journalized by a court or county board of revision, *see* R.C. 323.65(J)] and that the parcel shall be transferred by deed directly to [a land bank or a statutorily eligible political subdivision] without appraisal and without a sale, free and clear of all impositions and any other liens on the property, which shall be deemed forever satisfied and discharged.

R.C. 323.78(B). Division (B) of the statute further provides that "[t]he court or board of revision shall order such a transfer regardless of whether the value of the taxes, assessments, penalties, interest, and other charges due on the parcel, and the costs of the action, exceed the fair market value of the parcel." *Id.*

{¶ 6} If the county treasurer does not invoke the alternative redemption period, the property is sold at auction and any surplus proceeds from the sale may be claimed by and distributed to junior lienholders and/or the owners. *See* R.C. 323.73(C) (last paragraph) (any party to the action that claims a right to the surplus proceeds from the sale "shall have a separate cause of action" in a county or municipal court where the property is located, and the clerk of court shall hold the surplus proceeds until the clerk receives an order from the court setting forth the order of priority and the amount of the surplus proceeds or receives a certified copy of an agreement between the parties that sets forth the priority and distribution of the surplus proceeds). Both an owner and a lienholder may request the transfer of a foreclosure action from a board of revision to a court of common pleas or a municipal court. *See* R.C. 323.691(A)(1) (transfers between a board of revision and the courts), 323.70(B) (owner's right to transfer) and, 323.72(A)(2)(b) (permitting a lienholder to request a transfer "in order to preserve [its] * * * security interest of record in the land"); *see also* R.C. 323.69(B)(2) (notice of foreclosure must relay that any owner of record may "file a pleading with the clerk of court requesting that the board transfer the case to a court of competent jurisdiction"). Any party aggrieved by a board of

revision's foreclosure adjudication has the right to appeal the board's final judgment to the common pleas court. R.C. 323.79. Such an appeal "shall proceed as an appeal de novo and may include issues raised or adjudicated in the proceedings before the county board of revision, as well as other issues that are raised for the first time on appeal and that are pertinent to the abandoned land that is the subject of those proceedings." *Id.*

*The Summit County case*

**{¶ 7}** In October 2017, the Summit County fiscal officer[1] filed a complaint with the Summit County Board of Revision seeking to enforce a $4,020.28 tax lien by foreclosing on a residential property in Akron that was owned by US Bank. According to US Bank, the county fiscal officer had valued the property at an amount that exceeded the tax lien.

**{¶ 8}** In November 2017, the board of revision held a hearing on the complaint. US Bank did not appear at the hearing and therefore was "in default of the proceedings," R.C. 323.69(D)(1). The board, finding that US Bank had been duly served with a summons, entered an adjudication of foreclosure ordering that US Bank's equity of redemption be extinguished upon the expiration of the 28-day alternative redemption period. *See* R.C. 323.65(J) and 323.78. In December 2017, the board ordered the Summit County sheriff to transfer the property to the Summit County Land Reutilization Corporation. The sheriff issued a deed effecting the transfer in January 2018.

**{¶ 9}** In December 2020, US Bank filed a complaint for a writ of mandamus in the Ninth District Court of Appeals. US Bank alleged that the direct transfer of the Akron property to the Summit County land bank constituted a taking of its private property under Article I, Section 19 of the Ohio Constitution and the Fifth and

---

1. Article IV, Section 4.01(2) of the Summit County Charter consolidates the offices of county auditor, county recorder, and county treasurer into a single position: county fiscal officer.

Fourteenth Amendments to the United States Constitution, and thus sought to compel Summit County to commence an appropriation proceeding.

{¶ 10} The Ninth District granted Summit County's motion to dismiss. The court concluded that US Bank was not entitled to a writ of mandamus, because US Bank "had plain and adequate remedies at law." 2021-Ohio-3189, 177 N.E.3d 661, ¶ 27.

*The Cuyahoga County case*

{¶ 11} In June 2017, the Cuyahoga County treasurer filed a complaint with the Cuyahoga County Board of Revision seeking to enforce a $1,498.69 tax lien by foreclosing on a residential property in Cleveland. The mortgage was assigned to US Bank in September 2017. According to US Bank, the county auditor had valued the property at an amount that exceeded the tax lien.

{¶ 12} In October 2017, the board of revision held a hearing on the complaint. Because US Bank did not appear at the hearing, the mortgage holder was in default of the proceedings. *See* R.C. 323.69(D)(1). The board entered an adjudication of foreclosure ordering that all parties' equity of redemption be extinguished upon the expiration of the alternative redemption period. The board also ordered the Cuyahoga County sheriff to transfer the property to the Cuyahoga County Land Reutilization Corporation. The sheriff issued a deed effecting the transfer in November 2017.

{¶ 13} In February 2021, US Bank filed a complaint for a writ of mandamus in the Eighth District Court of Appeals. US Bank alleged that the direct transfer of the Cleveland property to the Cuyahoga County land bank constituted a taking of private property under the state and federal Constitutions and sought to compel Cuyahoga County to commence an appropriation proceeding.

{¶ 14} The Eighth District granted the county's motion to dismiss. The court of appeals concluded that US Bank lacked standing to bring the mandamus action because "its mortgage lien was extinguished through the foreclosure action and its

own inaction or the inaction of its predecessor in interest." 2021-Ohio-2524, ¶ 12. The court noted that no statute or constitutional provision prohibited the state from retaining proceeds in excess of the amount of the delinquent taxes. And the court determined that US Bank had an adequate remedy at law because it could have appealed the board's judgment.

*The Lucas County case*

{¶ 15} In December 2016, the Lucas County treasurer filed a complaint with the Lucas County Board of Revision seeking to enforce a $7,267.27 tax lien by foreclosing on a residential property in Toledo. Federal Home Loan Mortgage Corporation ("Freddie Mac") held a mortgage on the property. According to US Bank, the county auditor had valued the property at an amount that exceeded the tax lien.

{¶ 16} In March 2017, the board of revision held a hearing on the complaint. The board found that Freddie Mac had been duly served with a summons; however, Freddie Mac did not appear at the hearing and therefore was in default of the proceedings. *See* R.C. 323.69(D)(1). The board entered an adjudication of foreclosure ordering that all parties' equity of redemption be extinguished upon the expiration of the alternative redemption period. In April 2017, the board ordered the Lucas County sheriff to transfer the property to the Lucas County Land Reutilization Corporation. The sheriff issued a deed effecting the transfer in April 2017.

{¶ 17} In April 2018—a year after the property was transferred to the Lucas County land bank and following several intervening reassignments of the mortgage—the mortgage was assigned to US Bank. US Bank alleges that more than $50,000 remains due on the mortgage loan.

{¶ 18} In May 2021, US Bank filed a complaint for a writ of mandamus in the Sixth District Court of Appeals alleging that the direct transfer of the Toledo property to the Lucas County land bank constituted a taking under the state and

federal Constitutions. US Bank sought to compel the commencement of an appropriation proceeding.

**{¶ 19}** The Sixth District granted the county's motion to dismiss. The court of appeals concluded that Freddie Mac "had a plain and adequate remedy at law for protecting its security interest in the subject property" in that it "had ample opportunity to challenge the direct transfer of the subject property before the Board of Revision and the court of common pleas." 6th Dist. Lucas No. L-21-1087, ¶ 21 (Aug. 5, 2021). The court explained that just because Freddie Mac had failed to exercise that remedy and that remedy was no longer available to US Bank did not mean that the remedy at law was inadequate. *Id.* The court did not address whether US Bank lacked standing to bring the mandamus action, which the county had raised as an alternative argument in its motion to dismiss.

*Appeals to this court*

**{¶ 20}** US Bank appealed to this court in each case. We granted the parties' joint motions to consolidate the appeals for briefing, 165 Ohio St.3d 1431, 2021-Ohio-3862, 176 N.E.3d 53, and for oral argument, __ Ohio St.3d __, 2022-Ohio-798, 184 N.E.3d 126; __ Ohio St.3d __, 2022-Ohio-798, 184 N.E.3d 127.

**Analysis**

*Legal standard*

**{¶ 21}** "When a property owner alleges the taking of private property, mandamus is the correct action to force the state to institute appropriation proceedings." *State ex rel. New Wen, Inc. v. Marchbanks*, 159 Ohio St.3d 15, 2020-Ohio-63, 146 N.E.3d 545, ¶ 15. To state a claim in mandamus, US Bank must show by clear and convincing evidence (1) that it has a clear legal right to appropriation proceedings, (2) that the counties have a clear legal duty to commence the proceedings, and (3) that it lacks an adequate remedy in the ordinary course of the law. *See id.*

{¶ 22} We review de novo the judgments dismissing US Bank's complaints for failure to state a claim upon which relief can be granted under Civ.R. 12(B)(6). *See Lunsford v. Sterilite of Ohio, L.L.C.*, 162 Ohio St.3d 231, 2020-Ohio-4193, 165 N.E.3d 245, ¶ 22. We must accept as true all factual allegations in the complaints when reviewing the motions to dismiss. *Id.* The lower courts properly dismissed the complaints only if it appears beyond doubt from the complaints that US Bank can prove no set of facts entitling it to relief. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus.

*Standing*

{¶ 23} With regard to the Cuyahoga and Lucas County cases, the counties argue that US Bank lacks standing because it did not own the mortgages on the properties in those counties when the takings allegedly occurred. Cuyahoga County points out that the assignment of the mortgage to US Bank for the Cleveland property was recorded in November 2017 (almost a month after the adjudication of foreclosure), and Lucas County points out that the assignment of the mortgage to US Bank for the Toledo property was recorded in April 2018 (more than a year after the adjudication of foreclosure).

{¶ 24} US Bank has standing in the Cuyahoga County case. Although the mortgage assignment to US Bank in that case was recorded in November 2017, it was executed in September 2017—a month before the board of revision's adjudication of foreclosure. Therefore, US Bank owned the mortgage for the Cleveland property at the time of the alleged taking. *See Sidle v. Maxwell*, 4 Ohio St. 236, 241 (1854) (an unrecorded mortgage is valid as between the parties to the instrument); *Stewart v. Hopkins*, 30 Ohio St. 502 (1876) (an unrecorded mortgage between the parties is valid); *see also Bank One, N.A. v. Dillon*, 9th Dist. Lorain No. 04CA008571, 2005-Ohio-1950, ¶ 9 ("the failure or success of recording an instrument has no effect on its validity as between the parties to that instrument").

**{¶ 25}** As for the Lucas County case, US Bank does not dispute that it did not own the mortgage for the Toledo property at the time of the alleged taking. And it is well-settled that the right to compensation belongs to whoever held the security interest in the property when the taking occurred. *See Danforth v. United States*, 308 U.S. 271, 284, 60 S.Ct. 231, 84 L.Ed. 240 (1939) ("For the reason that compensation is due at the time of taking, the owner at that time, not the owner at an earlier or later date, receives the payment"); *see also* 2A Sackman, *Nichols on Eminent Domain*, Section 6.03[9], Practice Tip (3d Ed.2022) ("As a general rule, only property owners at the time of the taking have standing to pursue an action for inverse condemnation"); *Knight v. Billings*, 197 Mont. 165, 176, 642 P.2d 141 (1982) ("the right to an inverse condemnation remedy does not pass to subsequent purchasers after the inverse condemnation"). US Bank argues that its predecessor in interest assigned its "rights under the mortgage" to US Bank, including "the right to receive any excess proceeds" from the foreclosure proceeding. But because there was no sale of the foreclosed property, no proceeds were generated. And US Bank has not shown that a takings claim was assigned to it when it acquired the mortgage. Accordingly, we hold that US Bank lacks standing in the Lucas County case.

*Adequate remedy*

**{¶ 26}** Each of the counties argue that US Bank's complaints were properly dismissed because it had adequate remedies in the ordinary course of the law. An appeal usually is a sufficient remedy that precludes relief in mandamus. *State ex rel. Durrani v. Ruehlman*, 147 Ohio St.3d 478, 2016-Ohio-7740, 67 N.E.2d 769, ¶ 15.

**{¶ 27}** We addressed whether the availability of an administrative appeal is an adequate remedy at law in *State ex rel. Kerns v. Simmers*, 153 Ohio St.3d 103, 2018-Ohio-256, 101 N.E.3d 430. In that case, several landowners sought a writ of mandamus to compel the commencement of appropriation proceedings by the Ohio Department of Natural Resources' Division of Oil and Gas Resources Management ("the division") after their properties were included in an oil-and-gas drilling unit

under R.C. 1509.28. *Id.* at ¶ 2-4. The landowners appealed the division chief's administrative order for unitization to the Ohio Oil and Gas Commission, which dismissed the appeal. *Id.* at ¶ 3. Although the landowners had the right to appeal the Oil and Gas Commission's dismissal of their appeal to a common pleas court under R.C. 1509.37, they failed to do so. *Id.* at ¶ 7-8.

{¶ 28} We did not issue a writ of mandamus in *Kerns*, because an appeal to the common pleas court—though not taken by the landowners—was an adequate remedy at law. *Id.* at ¶ 15. We explained that an appeal to the common pleas court would have provided the landowners an adequate remedy at law because, had the common pleas court agreed with their argument and vacated the administrative order, "[n]o taking would have occurred." *Id.* at ¶ 8. In other words, the landowners had an adequate remedy because they could have asked a common pleas court to overturn the administrative order and potentially avoided the alleged property losses altogether. *See id.* at ¶ 12-13.

{¶ 29} US Bank had similar—indeed, more robust—remedies in the underlying foreclosure cases. As an initial matter, US Bank could have redeemed the properties (and protected any security interests it had in the properties) by paying what was due on the tax liens. *See* R.C. 323.69(B)(1). Alternatively, US Bank could have sought transfers of the foreclosure actions from the boards of revision to the common pleas courts. As the mortgage holder in the Cuyahoga County case, US Bank could have requested a transfer of the proceedings to the common pleas court "in order to preserve [its] * * * security interest of record in the land," R.C. 323.72(A)(2)(b). *See also* R.C. 323.691(A)(1). And as the landowner in the Summit County case, US Bank had an absolute right to have that case transferred to the common pleas court. *See* R.C. 323.69(B)(2) and 323.70(B). In addition, US Bank could have appealed the boards' adjudications of foreclosure to the common pleas courts in both cases. *See* R.C. 323.79. On appeal, the common pleas courts would have reviewed the adjudications of foreclosure de novo, and US Bank could have

raised new issues for the first time. *See id.* As in *Kerns*, the relevant statutory scheme applicable here provided a way for US Bank to try to avoid any property loss.

{¶ 30} US Bank resists the application of *Kerns*, arguing that *Kerns* "is limited to issues arising under R.C. Chapter 1509." But *Kerns* is not so limited; we applied settled law in that case, which provides that " '[t]he writ of mandamus, at common law, was a prerogative writ, introduced to prevent discord from a failure of justice, and to be used on occasions where the law had established no specific remedy.' " (Brackets added in *Kerns*.) *Id.*, 153 Ohio St.3d 103, 2018-Ohio-256, 101 N.E.3d 430, at ¶ 5, quoting *Shelby v. Hoffman*, 7 Ohio St. 450, 455 (1857). Like the property owners in *Kerns*, US Bank had the ability to obtain complete relief—i.e., to avoid the alleged takings and any need for appropriation proceedings—by asserting its rights as allowed by statute. *See Kerns* at ¶ 12.

{¶ 31} US Bank argues that the available remedies in the ordinary course of the law would not have provided it with complete relief, because a court could not have conducted an appropriation proceeding in each of these three cases. US Bank argues that it had to sit by and do nothing while the foreclosure actions ran their course, because only after the properties had been transferred to the county land banks could it claim that it had been harmed. In making this argument, US Bank assumes that its alleged losses were unavoidable—that the boards of revision (or perhaps the common pleas courts) would have ordered direct transfers of the properties to the land banks no matter what. But the direct transfers became inevitable only because no interested party objected to the proceedings. As we made clear in *Kerns*, when the law provides an adequate remedy in the ordinary course of the law to avoid a loss of property, a party cannot seek an extraordinary writ instead of pursuing that remedy. *See Kerns* at ¶ 8, 12-13. US Bank has not shown that it could not have protected its security interests in the properties through the available court proceedings. *See New Wen*, 159 Ohio St.3d 15, 2020-Ohio-63, 146 N.E.3d

545, at ¶ 15 (it is the relator's burden to establish the absence of an adequate remedy in the ordinary course of the law).

{¶ 32} As a final matter, US Bank relies on *Domito v. Maumee*, 140 Ohio St. 229, 42 N.E.2d 984 (1942), in support of its argument that it may challenge the constitutionality of the direct transfers outside the statutory process created under R.C. 323.65 et seq. *Domito* involved a property owner's attempt to enjoin a municipality from collecting a special assessment against his land on the ground that the assessment constituted an unconstitutional taking. *Id.* at 229. The property owner in *Domito*, however, did not pursue a mandamus claim seeking to compel the commencement of an appropriation proceeding. *Domito*, therefore, did not address the issue at hand—whether a party seeking extraordinary-writ relief for an alleged unconstitutional taking of private property had an adequate remedy in the ordinary course of the law.

{¶ 33} Because US Bank had an adequate remedy in the ordinary course of the law in the Cuyahoga and Summit County cases, the Eighth District and the Ninth District Courts of Appeals, respectively, properly dismissed US Bank's complaints. Therefore, we need not address US Bank's remaining arguments.

### Conclusion

{¶ 34} We affirm the judgment of the Sixth District Court of Appeals because US Bank lacks standing in the Lucas County case. We affirm the judgments of the Eighth District and the Ninth District Courts of Appeals because US Bank had an adequate remedy in the ordinary course of the law in the Cuyahoga and Summit County cases, respectively.

Judgments affirmed.

KENNEDY, C.J., and DEWINE, DONNELLY, STEWART, BRUNNER, and BYRNE, JJ., concur.

MATTHEW R. BYRNE, J., of the Twelfth District Court of Appeals, sitting for DETERS, J.

_____

Advocate Attorneys, L.L.P., Andrew M. Engel, and Marc E. Dann, for appellant.

Roetzel & Andress, L.P.A., and Stephen W. Funk, for appellees.

Jay R. Carson, urging reversal for amicus curiae The Buckeye Institute in case No. 2021-1181.

Oliver J. Dunford, urging reversal for amicus curiae Pacific Legal Foundation in case No. 2021-1181.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Charles W. Anness, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.

Yourkvitch & Dibo, L.L.C., and Matthew P. Yourkvitch, urging affirmance for amici curiae County Commissioners Association of Ohio, County Treasurers Association of Ohio, County Auditors Association of Ohio, and Ohio Mayors Alliance.

_____