[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Duncan v. Am. Transm. Sys., Inc.*, Slip Opinion No. 2022-Ohio-323.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-323

THE STATE EX REL. DUNCAN, APPELLANT, *v*. AMERICAN TRANSMISSION SYSTEMS, INC., ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Duncan v. Am. Transm. Sys., Inc.*, Slip Opinion No. 2022-Ohio-323.]

*Original jurisdiction—Mandamus—Takings—Article IV, Section 3(B) of Ohio Constitution does not grant courts of appeals original jurisdiction to decide nuisance claims or empower them to grant declaratory, injunctive, or compensatory relief—Owner of land near construction of power lines failed to allege risks of harm constituting an actionable taking—Court of appeals' dismissal of complaint affirmed.*

(No. 2021-0770—Submitted October 26, 2021—Decided February 9, 2022.)

APPEAL from the Court of Appeals for Portage County, No. 2021-P-0005, 2021-Ohio-1697.

_____

**Per Curiam.**

{¶ 1} Appellant, Richard Duncan, appeals the judgment of the Eleventh District Court of Appeals dismissing his complaint against appellees, American Transmission Systems, Inc., and FirstEnergy Corp. (collectively, "ATSI"), the city of Aurora, and Aurora Mayor Ann Womer Benjamin. The court of appeals determined that Duncan's claims asserting private and public nuisance and his requests for declaratory, injunctive, and compensatory relief exceeded its original jurisdiction and that his mandamus claim seeking the commencement of an appropriation proceeding failed to state a claim upon which relief could be granted. We affirm.

## I. BACKGROUND

{¶ 2} Duncan alleges that in 1994, he purchased a landlocked, 0.10-acre parcel of land next to an abandoned right-of-way. He hoped that Aurora would acquire the right-of-way, convert it into a recreational use, and allow him to use it to access a public road from his parcel.

{¶ 3} In 2017, Aurora learned that ATSI was interested in acquiring the right-of-way for the purpose of installing transmission towers. Seeking to prevent the construction of power lines on the right-of-way, Aurora sued to acquire it in 2019. In 2020, Duncan learned that Aurora was planning to settle the lawsuit with ATSI, enabling the project to move forward. And Aurora apparently adopted an ordinance that facilitated the settlement. According to Duncan, ATSI is now the "purported * * * present owner of the abandoned right of way."

{¶ 4} In 2021, Duncan filed a complaint in the Eleventh District Court of Appeals. He alleged that if ATSI's project had not been approved, he would likely have acquired an easement from Aurora allowing him to use the right-of-way to access the public road from his lot. And because of the "small size" of his lot and its proximity to ATSI's power lines, he claimed, "any personal or real property placed on his lot * * * will become a safety hazard due to arcing problems." In

addition, he asserted, "any human beings or animals present on the lot will be [at] a safety risk and also a health risk due to cancer concerns." Duncan further alleged that other, larger lots near the right-of-way will not be harmed in the same way. Duncan's complaint sought (1) a declaration that the power lines are a public and private nuisance resulting in a taking of his property, (2) a preliminary and permanent injunction halting the project's construction, (3) a writ of mandamus ordering appellees to commence appropriation proceedings, (4) compensatory damages, and (5) other relief deemed necessary and reasonable.

{¶ 5} ATSI filed a motion to dismiss, which the court of appeals granted. The court determined that its jurisdiction under Article IV, Section 3(B) of the Ohio Constitution did not extend to Duncan's nuisance claims or his requests for declaratory, injunctive, or compensatory relief. And it declined to issue a writ of mandamus ordering appropriation proceedings because Duncan had failed to allege an actionable taking. Duncan then filed this appeal.

## II. ANALYSIS

### A. The court of appeals' jurisdiction over Duncan's nonmandamus claims (Duncan's proposition of law No. I)

{¶ 6} Our review of a dismissal under Civ.R. 12(B)(1) for lack of subject-matter jurisdiction is de novo. *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 146 Ohio St.3d 315, 2016-Ohio-478, 56 N.E.3d 913, ¶ 12.

{¶ 7} The Ohio Constitution vests the courts of appeals with original jurisdiction in quo warranto, mandamus, habeas corpus, prohibition, or procedendo and "[i]n any cause on review as may be necessary to complete its determination." Ohio Constitution, Article IV, Section 3(B)(1); *see also State ex rel. Neer v. Indus. Comm.*, 53 Ohio St.2d 22, 23-24, 371 N.E.2d 842 (1978). Because the Constitution does not grant the courts of appeals original jurisdiction to decide nuisance claims or empower them to grant declaratory, injunctive, or compensatory relief, the court of appeals correctly dismissed those aspects of Duncan's complaint. *See Pratts v.*

*Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 21. Although a writ of mandamus is in the nature of a mandatory injunction, the injunctive relief that Duncan seeks is a restraint on the construction of ATSI's project. *See State ex rel. Gadell-Newton v. Husted*, 153 Ohio St.3d 225, 2018-Ohio-1854, 103 N.E.3d 809, ¶ 9-10, 13. That type of relief is in the nature of a prohibitory injunction, which the court of appeals lacks jurisdiction to grant. *Id.*

{¶ 8} Notwithstanding these jurisdictional limits, Duncan argues that it was proper for him to file an omnibus complaint to avoid the preclusive effects imposed by the doctrines of collateral estoppel and res judicata. But Duncan cites no authority to justify relaxing the jurisdictional limits of the courts of appeals under these circumstances. And his fear that these preclusive doctrines will bar him from raising claims in a later action is unfounded because the doctrines do not apply when, as here, a court lacks subject-matter jurisdiction. *See State ex rel. Donaldson v. Athens City School Dist. Bd. of Edn.*, 68 Ohio St.3d 145, 150, 624 N.E.2d 709 (1994) ("for collateral estoppel and *res judicata* to apply, the judgment to which preclusive effect would be given must have been issued by a court with jurisdiction over the subject matter").

**B. Aurora's role in the alleged taking (Duncan's proposition of law No. II)**

{¶ 9} Duncan next makes a passing argument that because the court of appeals' opinion does not discuss his allegations against Aurora, we must reverse. We reject this proposition of law given the lack of meaningful analysis in Duncan's brief. *See Mason City School Dist. Bd. of Edn. v. Warren Cty. Bd. of Revision*, 138 Ohio St.3d 153, 2014-Ohio-104, 4 N.E.3d 1027, ¶ 38 (determining that the appellant's failure to develop an argument or cite authority was sufficient grounds for rejecting the argument).

### C. Mandamus and the law of takings (Duncan's proposition of law Nos. III through VII)

{¶ 10} In determining whether the court of appeals correctly dismissed Duncan's mandamus claim under Civ.R. 12(B)(6), we must presume the truth of the complaint's factual allegations and draw all reasonable inferences in Duncan's favor. *State ex rel. Martre v. Reed*, 161 Ohio St.3d 281, 2020-Ohio-4777, 162 N.E.3d 773, ¶ 8. "However, unsupported legal conclusions, even when cast as factual assertions, are not presumed true for purposes of a motion to dismiss." *Id.* at ¶ 12. Our review of a decision granting a motion to dismiss under Civ.R. 12(B)(6) is de novo. *Id.* at ¶ 8.

{¶ 11} "The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation." *State ex rel. Shemo v. Mayfield Hts.*, 95 Ohio St.3d 59, 63, 765 N.E.2d 345 (2002), *judgment modified in part on other grounds*, 96 Ohio St.3d 379, 2002-Ohio-4905, 775 N.E.2d 493; Fifth and Fourteenth Amendments to the U.S. Constitution; Ohio Constitution, Article I, Section 19. A property owner alleging a taking of private property may institute a mandamus action to compel the state to commence appropriation proceedings.[1] *State ex rel. New Wen, Inc. v. Marchbanks*, 159 Ohio St.3d 15, 2020-Ohio-63, 146 N.E.3d 545, ¶ 15. To be entitled to a writ of mandamus, the relator must establish by clear and convincing evidence (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate legal remedy. *Id.* "In order to establish a taking, a landowner must demonstrate a substantial or unreasonable interference with a property right. Such an interference may involve the actual physical taking of real

---

1. Although a private party, ATSI does not dispute that it is authorized to institute appropriation proceedings. *See, e.g.*, R.C. 4933.15 (authorizing any company transmitting or distributing electricity in Ohio to exercise the right of appropriation); *Cincinnati Gas & Elec. Co. v. Pope*, 54 Ohio St.2d 12, 374 N.E.2d 406 (1978) (appropriation action brought by public utilities to acquire power-line easement).

property, or it may include the deprivation of an intangible interest in the premises." (Citations omitted.) *State ex rel. OTR v. Columbus*, 76 Ohio St.3d 203, 206, 667 N.E.2d 8 (1996).

### 1. Risks of harm

**{¶ 12}** Duncan argues that he adequately pled a compensable taking by alleging that his property "will become a safety hazard due to arcing problems" and that "any human beings or animals present on the lot will be [at] a safety risk and also a health risk due to cancer concerns." Arcing is a phenomenon described as a "sustained luminous discharge of electricity across a gap in a circuit or between electrodes." *Merriam-Webster's Collegiate Dictionary* 64 (11th Ed.2020).

**{¶ 13}** The court of appeals rejected Duncan's arcing argument based on *Smith v. Cent. Power Co.*, 103 Ohio St. 681, 137 N.E. 159 (1921), quoting the following sentence: "The mere fact of the danger attendant upon the maintenance of high voltage wires in front of the property is not a valid ground of objection, unless it is also an interference with access, light, air, or view," *id.* at 699 (Marshall, C.J., concurring). In doing so, however, the court of appeals failed to specify that it was quoting a concurring opinion.

**{¶ 14}** But even if the court of appeals improperly relied on the *Smith* concurrence, we will not reverse a correct judgment supported by flawed reasoning. *See State ex rel. McGrath v. Ohio Adult Parole Auth.*, 100 Ohio St.3d 72, 2003-Ohio-5062, 796 N.E.2d 526, ¶ 8. And "[w]e review a judgment of the court of appeals in a mandamus action filed in that court 'as if the action had been filed originally in [this court].' " *State ex rel. Dynamic Industries, Inc. v. Cincinnati*, 147 Ohio St.3d 422, 2016-Ohio-7663, 66 N.E.3d 734, ¶ 7, quoting *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 164, 228 N.E.2d 631 (1967).

**{¶ 15}** Here, the gravamen of Duncan's allegation is that ATSI's power lines pose a *risk* of harm.[2]  But Duncan cites no authority establishing that allegations of risks of harm stemming from the proximity of property to power lines are enough to establish an actionable taking.  He points to three decisions that, he says, hold that "arcing or being near electric transmission lines is a real threat."  But none of those decisions announced a rule of law within the context of a takings analysis.  *See Otte v. Dayton Power & Light Co.*, 37 Ohio St.3d 33, 36, 523 N.E.2d 835 (1988) (considering whether a public utility could be held strictly liable for damages in tort); *Ohio Edison Co. v. Wilkes*, 7th Dist. Mahoning No. 10 MA 174, 2012-Ohio-2718, ¶ 1-3 (considering whether an easement prohibited a landowner's shed in the utility's right-of-way); *Ogle v. Ohio Power Co.*, 180 Ohio App.3d 44, 2008-Ohio-7042, 903 N.E.2d 1284, ¶ 10 (4th Dist.) (holding that the plaintiff's complaint set forth a valid nuisance claim against a utility).  And though *Florida Power & Light Co. v. Jennings*, 485 So.2d 1374 (Fla.App.1986), *quashed and remanded on appeal*, 518 So.2d 895 (Fla.1987)—cited in Duncan's reply brief—arose from a takings action, the question in that case was not whether a taking had occurred but whether the public's fear of power-line hazards could be accounted for in determining the value of property already taken, *id.* at 1379.

**{¶ 16}** In summary, although the concurrence from *Smith*, 103 Ohio St. 681, 137 N.E. 159, does not by itself require dismissal of Duncan's complaint, he has otherwise failed to cite any authority showing that his alleged risks of harm constitute an actionable taking.

### 2.  *Denial of access and right to exclude*

**{¶ 17}** Duncan also argues that his allegations establish that he has suffered a compensable taking by way of a denial of access to his lot.  "One of the elemental

---

2. It is not obvious from the complaint how far along ATSI has progressed in constructing its power lines.  We presume that enough progress has been made to justify Duncan's alleged fears.  *See Martre*, 161 Ohio St.3d 281, 2020-Ohio-4777, 162 N.E.3d 773, at ¶ 8.

rights growing out of the ownership of a parcel of real property is the right to access abutting public roadways." *OTR*, 76 Ohio St.3d at 207, 667 N.E.2d 8. But Duncan derives no benefit from this rule because he admits that his parcel was landlocked when he bought it. Without any road access to begin with, it follows that appellees have not caused the loss of any right of access. Nor is it obvious how Duncan's inability to access his lot deprives him of his right to exclude others; this is not a case in which someone is attempting to force an easement across the landowner's property, as in *Dolan v. Tigard*, 512 U.S. 374, 385-386, 394, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).

### 3. Regulatory takings

{¶ 18} In addition, Duncan contends that he has adequately alleged a regulatory taking by way of Aurora's ordinance approving ATSI's project. But Duncan has not alleged any facts establishing that Aurora's ordinance regulates his property in any way. Indeed, we have not been provided a copy of, let alone a citation to, the ordinance.

{¶ 19} Duncan also borrows a legal term of art from *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1016, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), claiming that he has been denied all "economically viable use" of his property. But "unsupported legal conclusions" are not enough to withstand a motion to dismiss. *Martre*, 161 Ohio St.3d 281, 2020-Ohio-4777, 162 N.E.3d 773, at ¶ 12.

### 4. Consequential damages

{¶ 20} Next, Duncan argues that his description of damages that are peculiar to his property adequately alleged a compensable taking.

{¶ 21} A taking may "be found where it is clear that the injury sustained by a person differs substantially in kind from that sustained by others in the neighborhood, even though there has been no physical displacement." *McKee v. Akron*, 176 Ohio St. 282, 285, 199 N.E.2d 592 (1964), *overruled on other grounds*,

8

*Haverlack v. Portage Homes, Inc.*, 2 Ohio St.3d 26, 442 N.E.2d 749 (1982). In *McKee*, we determined that the plaintiff's injury—odor emanating from a nearby sewage-disposal plant—was not actionable, because it was common to everyone in the vicinity. *Id.* at 286. As we explained, "the fact that property is rendered less desirable as a result of the governmental activity does not in and of itself constitute a taking." *Id.* at 285.

{¶ 22} Although Duncan argues that unlike his property, neighboring properties will not be "materially" affected by the presence of ATSI's power lines, injuries that differ in degree but not in kind are not actionable. *See Richley v. Jones*, 38 Ohio St.2d 64, 68-69, 310 N.E.2d 236 (1974); *Smith v. Erie R.R. Co.*, 134 Ohio St. 135, 145, 16 N.E.2d 310 (1938). And to the extent that Duncan claims that only he will suffer the risks of arcing and cancer, he has not presented a cogent legal argument that his fears of arcing and cancer present an actionable takings claim.

{¶ 23} Having failed to adequately allege an actionable taking, Duncan's allegations are reduced to a claim for consequential damages. Our caselaw has repeatedly rejected such claims, and we follow it here. *See, e.g.*, *Smith* at paragraph two of the syllabus ("When there is no taking altogether or pro tanto, damages consequential to the taking of other property in the neighborhood, or to the construction of the improvement, are not recoverable; under such circumstances, loss suffered by the owner is damnum absque injuria [damage for which there is no legal remedy]"); *State ex rel. Taylor v. Whitehead*, 70 Ohio St.2d 37, 39, 434 N.E.2d 732 (1982) ("Even if [the landowners] could prove that their properties decreased in value, diminution is not itself a taking").

### 5. *Procedural unfairness*

{¶ 24} Duncan also argues that the court of appeals' dismissal of his case reflects procedural unfairness, claiming that he is entitled to a trial rather than protracted litigation. In support of this argument, he invokes *United States v. Dickinson*, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947), in which the United

States Supreme Court observed that the "Fifth Amendment expresses a principle of fairness and not a technical rule of procedure," *id.* at 748, and that an "owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really 'taken,' " *id.* at 749. Contrary to what Duncan argues, *Dickinson* neither requires a trial in this case nor prohibits dismissal of his complaint under Civ.R. 12.

### 6. *Remaining arguments*

{¶ 25} Two arguments remain. First, Duncan argues that if he can prove a taking, then he will be entitled to just compensation as measured by the fair market value associated with his loss. Second, Duncan urges us to account for *Armstrong v. United States*, 364 U.S. 40, 48, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960), in which the United States Supreme Court observed that the "Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Duncan's failure to allege an actionable taking obviates the need to consider these arguments.

## III. CONCLUSION

{¶ 26} For the foregoing reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Richard Duncan, pro se.

Roetzel & Andress, L.P.A., Stephen D. Jones, and Jeremy S. Young, for appellees, American Transmission Systems, Inc., and FirstEnergy Corp.

_____